514 A.2d 204

William Martin, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 11, 1986, before President Judge CRUMLISH, JR., Judges ROGERS and COLINS, sitting as a panel of three.

*Jonathan E. Jones, Ogg, Jones & Desimone,* for petitioner.

*Jeffrey P. Schmoyer,* Assistant Counsel, with him, *John Kane* and *Jean E. Graybill,* for respondent.

OPINION BY JUDGE COLINS, July 30, 1986:

William Martin (petitioner) appeals from a final order of the Department of Public Welfare (DPW) dismissing an appeal from a denial of Medical Assistance (MA)[1] dated March 18, 1983. Because DPW erred in failing to afford the Martins proper notice of the grounds for the denial and in failing to make findings of fact regarding the timeliness of petitioner's appeal, we vacate in part and remand with specific instructions.

---

[1] Medical Assistance (MA) is defined in 55 Pa. Code §101.2. The Pennsylvania Medical Assistance (MA) Program is authorized by Sections 441.1-453 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *added by* Act of July 31, 1968, P.L. 904, *as amended,* 62 P.S. §§441.1-453. Those who are categorically needy or medically needy under the standards of financial eligibility established by DPW are eligible for MA. *See* 62 P.S. §§441.1, 442.1 and 55 Pa. Code §§141.81, 171.81. The MA program is funded jointly by the state and the federal government. Federal funding is contingent upon adherence to the requirements of the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. §§1396-1396(p) and its accompanying regulations. Adherence is normally evaluated by submission of a plan to the Secretary of the Health and Human Services Department (HHS), who then approves or disapproves the plan.

In September of 1982, petitioner's wife, Louise Martin, became seriously ill and had to be hospitalized for major surgery. In December of 1982, petitioner's daughter, Theodora Martin, also became seriously ill and had to be hospitalized for major surgery in December of 1982 and again in April of 1983.

Petitioner and his family were named insureds under a policy of insurance issued by the New World Maintenance Association, Inc. (NWMA), an organization then purporting to operate as a licensed health and disability insurer under the laws of the State of California.[2] In February of 1983, petitioner received a notice from the California Department of Insurance (CADOI) stating that NWMA had lost its permission to operate in California as a consequence of a stipulation and order entered into by NWMA and CADOI stating that NWMA had never obtained proper licensing to operate as a California health insurer.[3] On August 24, 1983, NWMA and its constituent trading groups and corporations filed a petition for Chapter VII bankruptcy relief[4] in the United States Bankruptcy Court for the Central District of California.

On March 1, 1983, petitioner's wife, Louise Martin, went to the Westmoreland County Assistance Office (CAO) and requested Medical Assistance (MA) benefits for herself and her family. At the time, petitioner's family was faced with more than $6,500.00 in bills from the September, 1982, surgery on Louise Martin and nearly $6,000.00 in bills from the December, 1982, surgery on Theodora Martin. The amount due for the April, 1983, surgery would prove to be nearly $8,000.00, making for a total of approximately $20,500.00 in medical bills in

---

[2] *See* Cal. Ins. Code, §§1-15062 (West 1972 & Supp. 1986).

[3] *See* Cal. Ins. Code, §700(a) (West 1972 & Supp. 1986).

[4] *See* 11 U.S.C. §§701-766.

just under seven months' time. The total amount of insurance ultimately recovered by the Martins from a reinsurer of NWMA was $2,500.00. The Martins' total income was such that they could qualify as medically needy and be eligible for MA.

Mrs. Martin was told by a CAO worker that her application could not be considered or processed, and her eligibility established, unless she first submitted the following items to the CAO:

(1) a 1982 profit-loss statement or a 1982 Federal tax return;

(2) verification of money spent on prescriptions;

(3) verification of payment of monthly hospital premiums.

On March 18, 1983, the CAO sent the Martins a notice of its decision to deny the application based upon the Martins' failure to provide "essential" information. The information was not specified on the denial form. The notice of denial contained no reference to any of the above-requested information or to a time limit for furnishing the information. The notice of denial was not preceded by either an oral or a written request for the furnishing of this information.

The testimony of Mrs. Martin before the hearing officer was that no definite time was assigned by which she had to submit the requested information, and that she had told the CAO worker it would take her family some time to gather the information together, as they had not yet filed a federal tax form for 1982. The CAO worker at the hearing testified that Mrs. Martin had been told to return the forms within fifteen (15) days. The hearing officer made no finding of fact regarding this issue. The denial form makes no mention of a fifteen (15) day deadline.

Subsequently, on April 7, 1983, the Martins reapplied for MA, this time providing sufficient information.

This application was approved on May 9, 1983, the eligibility period running from 4/7/83 to 10/7/83, for full payment subject to client's liability of $2,877.68 over the six-month eligibility period.

The instant issue arose when the Martins discovered that DPW would not furnish MA reimbursement to cover the costs of daughter Theodora Martin's December, 1982, surgery or of wife Louise Martin's, September, 1982, surgery. On November 14, 1983, DPW received a letter from the Martins dated October 25, 1983, purporting to be an appeal of the March 18, 1983, denial of eligibility.

The hearing officer, after holding a hearing by telephone, proceeded to dismiss this appeal for want of timeliness pursuant to 55 Pa. Code §275.3(b). The Office of Hearings and Appeals affirmed and the petitioner's request for reconsideration was denied by the Executive Deputy Secretary of DPW.

## I. TIMELY APPEAL

Before we can address the merits of the March 18, 1983, denial,[5] we first consider the contention that the

---

[5] The crux of this appeal centers on 55 Pa. Code §141.81(g)(1), which states:

(g) *Initial Application.* Eligibility for any of the MA services will begin with the service provided during the 90-day period preceding the date of application for Medical Assistance, if the applicant was eligible for the service during that period.

This regulation is not authorized specifically by state law but instead is based on 42 U.S.C. §1396(a)(34), which requires state medicaid plans to:

provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made

appeal was not timely taken. The hearing officer erred in stating that all appeals from a DPW adjudication must be taken within thirty days. First, 55 Pa. Code §275.3(b)(2) sets out a sixty-day appeal time where written notice is not required. Second, 55 Pa. Code §275.3(3) sets forth a six-month appeal time "when the County Office, administering agency, or service provider fails to send written notice which was required of the action and of the right of appeal *or* because of administrative error, ongoing delay or failure to take corrective action that should have been taken. . . ." (Emphasis added.) We have construed this provision disjunctively, invocable upon either administrative error, delay or failure to take action, or upon lack of proper written notice. *Compare Trant v. Department of Public Welfare,* 70 Pa. Commonwealth Ct. 52, 452 A.2d 590 (1982) *with Crail v. Department of Public Welfare,* 53 Pa. Commonwealth Ct. 20, 416 A.2d 633 (1980). *See also Yarbrough v. Department of Public Welfare,* 84 Pa. Commonwealth Ct. 208, 478 A.2d 956 (1984); *Clark v. Department of Public Welfare,* 58 Pa. Commonwealth Ct. 142, 427 A.2d 712 (1981); *Zani v. Department of Public Welfare,* 42 Pa. Commonwealth Ct. 157, 400 A.2d 247 (1979); *Testa v. Department of Public Welfare,* 36 Pa. Commonwealth Ct. 633, 388 A.2d 793 (1978).

---

application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

If the Martins' initial application date is considered to have been March 1, 1983, then the surgery of December 12, 1982, on their daughter, Theodora, would fall within the provisions for retroactive reimbursement eligibility. However, the September, 1982, surgery would only be reimbursable if the three-month limitation were to be equitably waived or extended by judicial fiat.

Although the weight of authority of our decisions has been to construe exceptions to the appeal period narrowly, each case must be decided upon its own merits. The Martins, admittedly, delayed more than six months in filing their written appeal of the March 18, 1983, denial. Consequently, even the liberal provisions of 55 Pa. Code §275.3(b) are of no avail to them. If this appeal is to be heard, it must be granted *nunc pro tunc*. Based on the record before us, we lack findings sufficient to rule upon the propriety of granting or denying an appeal *nunc pro tunc*. A remand is required to make findings of fact relating to grounds for granting an appeal beyond the six-month period.

The Martins argue that the CAO never gave them a time limit for submitting the information as of March 1, 1983; that they reapplied on April 17, 1983, in a belief fostered by CAO workers, that their April 17, 1983, reapplication and subsequent eligibility approval constituted an appeal of the March 18, 1983, denial; that when the second application was approved, and their eligibility for MA established, the Martins were under the impression that any defects arising from the March 18, 1983, denial had been cured; that when they inquired about retroactive benefits, a CAO worker told them that the matter was being worked on; and that the necessity of filing a timely appeal was never discussed by the CAO. The record contains no findings as to these allegations. We suggest that in remanding, a record of testimony and findings of fact can be produced regarding these issues so that we can consider if the Martins' appeal should be heard.

Normally speaking, a time period for appeal may be extended *nunc pro tunc* upon a showing of fraud or breakdown in the administrative process. *See Department of Transportation, Bureau of Traffic Safety v. Royster*, 31 Pa. Commonwealth Ct. 647, 377 A.2d 1038

(1977). We also have equitable jurisdiction where administrative remedies are inadequate. *Barsky v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 417, 464 A.2d 590 (1983), *aff'd per curiam,* 504 Pa. 508, 475 A.2d 742 (1984).

In the recent case of *St. Christopher's Hospital for Children, A Division of United Hospitals, Inc. v. Department of Public Welfare,* 78 Pa. Commonwealth Ct. 113, 466 A.2d 1134 (1983), we held that it was incumbent upon the hearing officer to hold a hearing and take evidence on the issue of when an appeal was timely. Moreover, we held in *St. Christopher's Hospital* that the due process concerns of *Goldberg v. Kelly,* 397 U.S. 254 (1970), are of special importance in evaluating the process due an applicant for public welfare benefits. An applicant for MA clearly fits within the *Goldberg* sphere of due process concerns. No applicant may be determined ineligible for benefits without adequate notice of the reason for rejection and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Where the timeliness of an appeal turns on factual considerations, an applicant must be afforded a hearing in which those considerations are explored and an opportunity must be given to the applicant to offer proof in support of a claim that an appeal was timely filed. *St. Christopher's Hospital,* 78 Pa. Commonwealth Ct. at 116-117, 466 A.2d at 1136-37. *Compare Mathews v. Eldridge,* 424 U.S. 319 (1976) (tripartite test in evaluating what process is due); *Wolff v. McDonnell,* 418 U.S. 539 (1974); *Gagnon v. Scarpelli,* 411 U.S. 778 (1973). *See also Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487 (1985); *Adamovich v. Department of Public Welfare,* 95 Pa. Commonwealth Ct. 22, 504 A.2d 952 (1986).

Unfortunately, the hearing examiner did not make adequate findings of fact regarding the extent to which the Martins may have been misled by the CAO into not filing a timely appeal. The following issues are factual and require resolution:

(1) Did the CAO tell Mrs. Martin to file a reapplication form instead of telling her to appeal the March 18, 1983 denial?

(2) Were the Martins prejudiced or misled by the CAO's actions?

(3) Were the Martins misled subsequently such that they failed to file a timely appeal?

These types of findings are essential to determining whether the CAO violated DPW regulations to the extent that an appeal *nunc pro tunc* should be permitted on equitable grounds. Because we find below that the March 18, 1983, denial form failed to furnish the Martins with adequate notice of the grounds of denial, the remand will be for the purposes of determining what factual grounds, if any, exist for extending the time for the Martins' appeal *nunc pro tunc* beyond the six months normally provided for in 55 Pa. Code §275.3(b)(3).

## II. BASIS FOR DENIAL

The March 18, 1983, denial by the CAO of the Martins' benefits was defective on due process grounds because it failed to accord the Martins notice of the grounds and reasons for denying their application for benefits. Consequently, the thirty-day limit for appeals set forth in 55 Pa. Code §275.3(b)(1) is inapplicable.

No mention of a time limit allegedly set by the CAO for the return of information or of the three items of information allegedly requested by the CAO was made on the March 18, 1983, denial form provided to the Martins. Indeed, all the denial form actually states is

that "the client failed to supply essential information required on 3/3/83." The denial form further cites to DPW regulations 141.81(a)(9), and 131.84(a)(2)(iv), which are found at 55 Pa. Code §§141.81(a)(9) and 131.84(a)(2)(iv) respectively.

As a preliminary observation, we note that a person who is medically needy is statutorily eligible for MA.[6] Although the burden is on the applicant to demonstrate eligibility, the law requires that welfare recipients be advised of all services and benefits. *Carr v. Department of Public Welfare,* 50 Pa. Commonwealth Ct. 375, 412 A.2d 1126 (1980). Although a health care provider is presumed to know all pertinent eligibility regulations and cannot rely on DPW's errors to allege estoppel, *see Mercy Hospital v. Department of Public Welfare,* 89 Pa. Commonwealth Ct. 192, 492 A.2d 104 (1985), we hesitate to say that same thing about a welfare applicant, who normally lacks material means and has a limited educational background. Burdensome eligibility requirements and application procedures may as a consequence be illegal or violative of due process or equal protection.[7] The same dangers attend patently arbitrary and illegal administrative hurdles to a fair determination of eligibility.

---

[6] *See* Sections 441.1 and 442.1 of the Public Welfare Code, 62 P.S. §§441.1, 442.1.

[7] The U.S. Supreme Court has usually relied upon the due process clause or the constitutional right to travel rather than upon equal protection in affording rights to the poor. *Compare Santosky v. Kramer,* 455 U.S. 745 (1982); *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974); *Fuentes v. Shevin,* 407 U.S. 67 (1972); *Goldberg v. Kelly,* 397 U.S. 254 (1970); *and Shapiro v. Thompson,* 394 U.S. 618 (1969) *with Harris v. McRae,* 448 U.S. 297 (1980); *Maher v. Roe,* 432 U.S. 464 (1977); *San Antonio Independent School District v. Rodriguez,* 414 U.S. 1 (1973); *Jefferson v. Hackney,* 406 U.S. 535 (1972); *and James v. Valtierra,* 402 U.S. 137 (1971).

With this observation in mind, we note first that 55 Pa. Code §131.84(a)(2)(iv) is completely irrelevant to any legal basis for denying the Martins' March 1, 1983, application. The pertinent regulation would be 55 Pa. Code §131.84(a)(2)(i) which states:

An application [for MA] will be disposed of only if one of the following occurs:

(a) The applicant is found to be eligible and an identification card is issued.

(b) The applicant is found to be eligible but an identification card has not been issued because of excess assets.

(c) The applicant is found to be ineligible.

(d) The applicant withdraws or fails to complete the application.

Only 55 Pa. Code §131.84(a)(2)(i)(D) appears to be at all relevant, and it is not cited anywhere on the March 18, 1983, denial form provided to the Martins. Assuming arguendo it had been cited, 55 Pa. Code §131.84(a)(2)(i) (D) could not furnish authority for a denial of eligibility because no time limit is specified anywhere in this regulation mandating a two-week maximum for provision of information.[8]

---

[8] Another portion of the regulation, located at 55 Pa. Code §131.84(a)(2)(iii)(E) specifies statistical codes to be marked on the standard disposition of application form. Only Code 59, "refuses to provide essential information," or Code 68, "voluntary withdrawal," could be relevant to a premature denial, based on a lack of needed information, but the hearing examiner made no findings as to whether the Martins voluntarily withdrew from applying or willfully refused to supply information. The denial form simply says that "the client failed to supply essential information requested;" it says nothing about refusal to supply, which would imply a willful act or omission, or about withdrawal from the application process. There exists a Code 99, which in omnibus fashion stands for "other (to be used only if none of the specified Codes apply)." Of course, none of these Codes were marked or indicated on the March 18, 1983, denial form received by the Martins.

The other provision cited on the March 18, 1983, denial form, 55 Pa. Code §141.81(a)(9), also an omnibus regulation, states that in addition to eight (8) factors concerning income, age, address and the like, an applicant, to be eligible for MA, must "provide such other information as is required by the Department."

The denial form fails to meet the minimum due process requirements of state and federal law that an applicant be informed sufficiently of the reason for a denial of eligibility. While it is true that the burden is normally on a welfare claimant to demonstrate eligibility for benefits, *Dempsey v. Department of Public Welfare*, 45 Pa. Commonwealth Ct. 121, 404 A.2d 1373 (1979), we have also held that a failure to specify reasons, evidence and regulations in an administrative adjudication may be violative of Section 507 of the Administrative Agency Law, 2 Pa. C. S. §507 and may also be violative of federal regulations governing the assistance program. *Heinsohn v. Department of Public Welfare*, 66 Pa. Commonwealth Ct. 517, 521-22, 445 A.2d 271, 273 (1982).

The notice in this case was deficient. It did not specify that the CAO still required specific items of information, such as a 1982 tax return, verification of prescriptions and hospital premiums paid, before eligibility could be determined. Nor did the denial form specify that there had been a fifteen-day limit for provision of these items of information. The regulations cited to in the denial form are mere omnibus provisions, full of sound and fury but signifying nothing in terms of notice and due process. In the absence of written notice of the actual basis for denial, DPW did not follow its own regulations, failed to afford the Martins due process, and acted in violation of 2 Pa. C. S. §507.[9]

---

[9] We note in passing that there is no basis whatsoever in the applicable DPW regulations for treating the requested information

We hold that DPW never issued a meaningful order from which an appeal could properly be taken. The notice afforded the Martins of the basis for the denial did not satisfy federal and state due process, the requirements of 2 Pa. C. S. §507, and the requirements of our *Heinsohn* decision. Because we hold that notice was defective, the thirty-day limit of 55 Pa. Code §275.3(b)(1) is inapplicable. However, 55 Pa. Code §275.3(b)(3) provides for a six-month time limit on

---

as "essential." It is readily apparent that the filing deadline for 1982 federal income tax returns would have been April 15, 1983. Essentially, using only the authority of omnibus regulation 55 Pa. Code §141.81(a)(9), the CAO dictated to the Martins that as a necessary condition of eligibility for MA, they had to prepare, file and furnish the CAO with a copy of their 1982 tax return and do so within 14 working and non-working days. No argument is advanced why a 1981 tax return accompanied by a letter stating estimated income for 1982 would not have sufficed. This reading of the regulations is plainly inconsistent with both the state and federal enabling legislation governing the Medical Assistance Program. As such, the formulation is invalid and represents an abuse of administrative discretion. *See Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

We have, moreover, reviewed the relevant income eligibility provisions of the DPW regulations, *see* 55 Pa. Code §§141.81(a)(4), 183.71-74, 183.81-84, and can find no underlying authority for the CAO's requesting that the Martins furnish a 1982 tax return as of March 15, 1983. Indeed, there is no requirement anywhere in DPW regulations specifying that a claimant must furnish a tax return or a profit-loss statement before MA eligibility can be determined.

Nor do we find any authorization for requesting prescription expenditure verification, *see* 55 Pa. Code §175.84, or for requesting verification of monthly hospital premiums, *see* 55 Pa. Code §§177.71-84, 179.71-73, 179.81-84, 181.81-84. Indeed, the hearing officer at the hearing asked the testifying CAO workers what the basis was for requesting all these various items of information, and the workers did not offer satisfactory answers, based on our review of the transcript.

appeals in cases where proper written notice was not issued. To afford the Martins relief, we would have to extend this limit also and grant them an appeal *nunc pro tunc.* Consequently, a remand is required on the issue of what grounds, if any, exist for granting the Martins an appeal *nunc pro tunc* beyond the six-month limit provided for in 55 Pa. Code §275.3(b)(3).[10]

---

[10] There were no findings of fact on the issue of whether the CAO frustrated the Martins' taking of an appeal by telling them to reapply rather than appeal. If the CAO had told the Martins to reapply rather than appeal, the CAO would have acted in further dereliction of its duty to aid claimants in taking appeals from eligibility denials. We take particular note of 55 Pa. Code §275.4(a)(1), which places an affirmative duty on the CAO to aid claimants in understanding decisions and in making appeals:

(a) *Requesting a hearing.* The following procedures will be employed in requesting a hearing:

(1) *Aid to clients making appeals.* The County of Assistance Office or administering or provider agency will provide whatever help the applicant/recipient needs in requesting a hearing. This may include the following:

(i) Clearly explaining the basis for questioned decisions or actions.

(ii) Explaining the rights and fair hearing proceedings of the applicant/recipient.

(iii) Providing the necessary forms and explaining to the applicant/recipient how to file his appeal and, if necessary, how to fill out the forms.

(iv) Advising the applicant/recipient that they may be represented by an attorney, relative, friend, or other spokesman and explaining that he may contact his local bar association to locate the legal services available in the county.

(v) For food stamps, upon request, making available without charge case record materials relevant to the decision or action of the agency which are necessary for a household or its representative to determine whether a hearing should be requested or to prepare for a hearing. If the individual making the request speaks a language other than English and requires an interpreter pursuant to 7 C.F.R.

## III. The Ninety Day Period

There is no relief we can possibly afford the Martins in terms of the costs of the September, 1982, surgery on Mrs. Martin. The ninety-day retroactivity regulation, 55 Pa. Code §141.81(g)(1), has been upheld in a prior decision of this Court, *Berry v. Department of Public Welfare*, 42 Pa. Commonwealth Ct. 640, 401 A.2d 602 (1979).

We have reviewed the legislative history of 42 U.S.C. §1396(a)(34), which was not originally part of Title XIX of the Social Security Act (Medicaid) when it was first enacted in 1965.[11] However, language in the House Report concerning the original Medicaid Act indicates that as with prior federal practice, federal reimbursement would be available for optional retroactive

---

§272.4(c)(3), the agency shall provide bilingual staff or interpreters to explain the hearing procedures in that language.

This regulation should normally be followed by DPW personnel. The Martins point out that instead of receiving appeal forms and assistance in filling out such forms, the CAO merely provided them with reapplication forms. Indeed, when the Martins did finally appeal, they did so using their own typewriter and paper instead of a form furnished them by the CAO in accordance with 55 Pa. Code §275.4(a)(1)(iii). We cannot approve of DPW and CAO inadherence to explicit regulations requiring caseworkers to explain adverse adjudications and facilitate the taking of appeals.

However, in the absence of findings of fact in the record regarding these allegations, we cannot proceed to a resolution of the issues involved based solely on a recitation of the law. A remand is required for further factfinding on this issue. Naturally, the burden of proof will be on the Martins to demonstrate that they were misled in violation of 55 Pa. Code §275.4(a)(1) and other applicable regulations.

[11] Social Security Amendments of 1965 (Medicaid), Pub.L. 89-97, §§1901-1905, reprinted in 1965 U.S. Code Cong. & Ad. News (79 Stat. 344) 370-380 (codified as amended at 42 U.S.C. §1396(a)).

coverage at the election of the participating state provider up through the third month prior to the month of initial application.[12]

Apparently, when only thirty-one (31) states decided to provide this coverage, the Congress in enacting 1972 amendments to Title XIX (and other portions of the Social Security Act) made three-month retroactive eligibility coverage mandatory for the states, by means of what is now present day 42 U.S.C. §1396(a)(34).[13] The House Report[14] states that the provision was enacted to protect

> persons who are eligible for medicaid but do not apply for assistance until after they have received care, either because they did not know about the medicaid eligibility requirements, or because the sudden nature of their illness prevented their applying.[15]

The provision in question was again amended without extensive comment in 1973 to provide retroactive coverage for persons who died before eligibility could be claimed.[16]

Based on this legislative history, we cannot grant eligibility to the Martins for assistance beyond the ninety-day period. While we sympathize with the Martins' plight, we hesitate to revise the scope of state medical assistance regulations on equitable grounds where the supervening federal authority is so clearly to the con-

---

[12] *See* H. Rep. No. 213, 89th Cong., 1st Sess., reprinted in 1965 U.S. Code Cong. & Ad. News 1943, 2020.

[13] Social Security Amendments of 1972, Pub.L. 92-603, §255(a), reprinted in 1972 U.S. Code & Cong. Ad. News (86 Stat. 1381) 1692 (codified as amended at 42 U.S.C. §1396(a)(34)).

[14] H. Rep. No. 231, 92d Cong. 2d Sess., reprinted in 1972 U.S. Code & Cong. Ad. News 4989, 5008, 5099.

[15] *Id.* at 5099.

[16] Social Security Amendments of 1973, Pub.L. 93-233, §18(o), reprinted in 1973 U.S. Code & Cong. Ad. News (87 Stat. 960) 1085 (codified as amended at 42 U.S.C. §1396(a)(34)).

trary. Based on the legislative history of 42 U.S.C. §1396(a)(34), retroactive eligibility for medical assistance is targeted for the categorically and medically needy who are unable to timely apply for relief out of ignorance or illness. The provision was never intended to cure lapses of insurance coverage. Even if the provision was so intended, the ninety-day limit seems clear enough on its face and we cannot simply disregard it in the interests of doing justice. In short, this is a problem for the legislature, and we cannot afford petitioners judicial relief.

For the above reasons, the decision below is vacated in part and remanded. The referee is directed to hold a hearing and make findings as to why the petitioner failed to take an appeal within six (6) months of March 18, 1983, and proceed to a determination consistent with this opinion.

## ORDER

AND NOW, this 30th day of July, 1986, the order of June 6, 1984, by the Executive Deputy Secretary of the Department of Public Welfare is hereby vacated in part and remanded for an evidentiary hearing and further proceedings consistent with this opinion.

Jurisdiction relinquished.