529 A.2d 557

Satish R. Nayak, M.D., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued March 23, 1987, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*James F. O'Malley*, with him, *Margaret A. O'Malley, Yost & O'Malley*, for petitioner.

*Jason Manne*, Assistant Counsel, with him, *Mary Frances Grabowski*, Assistant Counsel, and *John Kane*, Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, July 21, 1987:

Satish R. Nayak, M.D., an enrolled provider in the Pennsylvania Medical Assistance Program (MA Program),[1] appeals an order of the Department of Public Welfare (DPW), Office of Hearings and Appeals, which adopted the recommendation of the Hearing Officer denying his appeal from the refusal of his request for an exception to the time limitations imposed upon the submission of invoices for payment of health care services rendered.

The time limitations on submission of invoices at issue in this case are found at Section 1101.68 of the Medical Assistance Manual (MA Manual), 55 Pa. Code §1101.68, effective January 1, 1980, as modified by the provisions of the Medical Assistance Bulletin (MA

---

[1] Pennsylvania's MA Program is associated with the Federal Medicaid system and is administered by the Department of Public Welfare pursuant to Section 201 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §201.

Bulletin) 99-83-05, issued on November 1, 1983. Section 1101.68 of the MA Manual states that:

(a) Providers shall use the invoices specified by the Department or its agents when billing for Medical Assistance services or items. Providers shall submit the invoices within 6 months after the delivery of the services or items. Invoices that have not been completed according to specified instructions or that lack any required documentation will be rejected by the Department. *In the event that an invoice is rejected by the Department, a remittance advice will be sent to the provider explaining the reason for the rejection. The provider may submit a corrected invoice for payment.*

(b) Invoices submitted after the 6-month period will be rejected absolutely unless:

(1) A recipient eligibility determination that was required to be made by a CAO [county assistance office] was delayed for 30 days or longer.

(2) Payment is being requested from a third party resource.

55 Pa. Code §1101.68(a) and (b). (Emphasis added.)

Under the modified procedure defined by the MA Bulletin, original invoices must be submitted to DPW within 180 days of the date of service. All claims adjustments and resubmissions must be received by DPW within 365 days of the date of service. The procedure thereby affords the provider one year from the date of service to submit correct invoices for payment, regardless of the number of resubmissions.[2]

---

[2] Under the prior procedure, providers had 180 days within which to resubmit a rejected claim or to submit a claim adjustment. There was no time limit on multiple resubmissions as long as each was submitted within 180 days from the previous rejection. *See* MA Bulletin 99-80-15.

In the years 1983 and 1984, Dr. Nayak timely submitted claims to the MA Program for reimbursement of services rendered to ten patients[3] eligible under Medicaid. Without detailing the specific handling of each invoice, suffice it to say that each invoice was rejected by DPW and payment was denied for one of the following reasons: (1) the improper coding as to type and place of service; (2) the absence of a patient Medical Assistance (MA) identification number; and (3) the alleged availability of alternative third party insurance negating DPW's liability for payment. In most instances, Dr. Nayak attempted to correct the coded information and resubmit the invoices, which were again rejected by DPW for one of the above reasons. Upon resubmission, these invoices were ultimately rejected as not submitted within the requisite 365 days from the date of service.

Dr. Nayak then requested an exception to the 180/365 day invoice submission limitation, in apparent reliance on the provisions of 55 Pa. Code §1101.68(b), as modified by MA Bulletin 99-83-05. The MA Bulletin pertinently provides that:

an exception [to the 180 or 365 day limit] will be granted to allow payment processing only if the deadline date for the submission of the claim could not be met for one of the following reasons: (1) the recipient's eligibility determination by the CAO was delayed by thirty (30) days or longer; or (2) payment is being requested from a third party resource.

DPW denied the exception to the time limitations because Dr. Nayak did not submit documentation at-

---

[3] At the hearing before the Hearing Officer, Dr. Nayak withdrew his appeal from DPW's denials of reimbursement of invoices submitted for services rendered to four patients.

tributing the delay to either a third party insurance request or eligibility determination directed to the CAO. Dr. Nayak appealed this decision to the Office of Hearings and Appeals and the matter proceeded to a hearing before a designated Hearing Officer. The Hearing Officer, after taking testimony from Dr. Nayak's office manager, as well as from a representative of DPW, denied Dr. Nayak's appeal, stating that "in all instances, the request for an exception to the time limit for submitting invoices was over the maximum 365 day limitation" and that he had "no authority to modify or invalidate [DPW] regulations." The Office of Hearings and Appeals adopted the Hearing Officer's recommendation and the Secretary of DPW denied Dr. Nayak's subsequent request for reconsideration after his Petition for Review was filed with this Court.

Upon appeal, Dr. Nayak contends that he is entitled to reimbursement for services rendered because he made every effort to comply with billing regulations. He argues that any errors in the submitted invoices were technical, inadvertent or minor and attributes delay to the dilatory and inconsistent manner in which DPW processes claims. He also asserts that he is entitled to payment, under principles of substantial performance, for services indisputably rendered and that the equities of this case demand that the time limitations for submission of claims not be strictly enforced.

DPW counters (1) that it properly denied Dr. Nayak's request for an exception to the 180/365 day rule; (2) that Dr. Nayak is not entitled to payment by virtue of his failure to timely appeal DPW's denial of his claims in accordance with Section 1101.84(c) of the MA Manual, 55 Pa. Code §1101.84(c); and (3) that the doctrine of substantial performance will not excuse noncompliance with substantive regulations having the force and effect of law.

There are absolutely no allegations of fraud in the instant matter. DPW rejected Dr. Nayak's claims for payment solely as a result of invoice errors, an area of fiscal accounting which, we emphasize, is terribly complicated. The volume of provider claims mandates that DPW's reimbursement system be computerized, thus requiring the provider to numerically code the patient information on the invoices submitted for payment. Invoices improperly coded are "kicked out" by the computer and returned to the provider with a notation indicating the source of coding error or inconsistency. We fully believe that providers, with some reason, view themselves as subject to the vagaries of a cumbersome and impersonal system. Dr. Nayak's office manager, who was responsible for billing, clearly expressed to the Hearing Officer her frustrations in attempting to unravel these complexities.

## I. *Timeliness*

Before we can address the merits of DPW's denial of Dr. Nayak's claims, we first consider the contention that the appeal was not timely taken. DPW submits that Dr. Nayak's failure to appeal the denial of his claims in accordance with Section 1101.84(c) of the MA Manual, 55 Pa. Code §1101.84(c), precludes his payment. That section pertinently provides that "appeals of . . . adverse actions of [DPW] shall be filed in writing within thirty (30) days of the date of notice of the action to the provider." We contrast this provision with those pertinent sections of MA Bulletin 99-83-05 which permit the provider to correct invoice errors and resubmit claims to DPW, with the limitation that all resubmissions must be received by DPW within 365 days of the date of service. We believe the two provisions may be confusing to providers confronted with reimbursement denials. The time point at which the provider must cease attempts to

obtain reimbursement by resubmitting claims, pursuant to the MA Bulletin, and appeal the denial, pursuant to Section 1101.84 of the MA Manual, is ambiguous. If the appeal period is in fact triggered by DPW's ultimate rejection of invoices as untimely, there is no indication on this record that DPW so notified Dr. Nayak. In contrast, DPW's denial of Dr. Nayak's request for an exception to the time limitations clearly designated the time period and method of appeal, a procedure which Dr. Nayak utilized.

A time period for appeal may be extended *nunc pro tunc* upon a showing of fraud or breakdown in the administrative process. *Martin v. Department of Public Welfare,* 99 Pa. Commonwealth Ct. 345, 514 A.2d 204 (1986). This Court also has equitable jurisdiction where administrative remedies are inadequate. *Id.* We are aware, of course, that providers are charged with knowledge of applicable DPW regulations. *Eye & Ear Hospital v. Department of Public Welfare,* 100 Pa. Commonwealth Ct. 363, 514 A.2d 976 (1986). However, in light of the potential confusion engendered in the application of these two seemingly inconsistent regulations pertaining to provider action upon denial of reimbursement, we will consider this matter as if timely appealed.

## II. *Request for Exception*

Upon DPW's denial of the pertinent invoices as untimely, Dr. Nayak requested an exception to the time limitations pertaining to two groups of patient invoices. As we have indicated, the provisions of the MA Bulletin permit payment of untimely invoices if the submission deadline could not be met because the CAO had delayed in determining MA eligibility or payment had been requested from a third party insurer, subsequently not forthcoming.

The exception provision is intended to prevent payment denial from circumstances beyond the provider's control. *See State College Manor Ltd. v. Department of Public Welfare,* 92 Pa. Commonwealth Ct. 89, 498 A.2d 996 (1985) (construing Section 1101.68 of the MA Manual, 55 Pa. Code §1101.68). Its application is restricted to the scenarios above defined, neither of which was implicated in the instant action. While Dr. Nayak clearly desired an *exception* to the time constraints upon the submission of invoices, his reliance on this provision was misguided. DPW properly denied his request for an exception.

### III. *The Merits of Dr. Nayak's Appeal*

The gravamen of Dr. Nayak's argument is that the doctrine of substantial performance precludes his forfeiture of payment for health care services indisputably provided, in accordance with this Court's decision in *Department of Public Welfare v. Dauphin County Social Services for Children & Youth,* 90 Pa. Commonwealth Ct. 295, 495 A.2d 214 (1985). He contends the doctrine is particularly applicable in the instant action because any errors in the submission of invoices were minor and inadvertent and any delay resulted from flaws in DPW's coding system and its inconsistent processing of similar invoices.

While we applied the doctrine of substantial performance in *Dauphin County,* we limited its application in *State College Manor* to the confines of a contract between two parties. We refused to apply the doctrine to permit reimbursement of invoices submitted by a nursing facility after the time limit on submission had expired. As we stated:

the equitable doctrine of substantial performance may excuse unimportant omissions with regard to the terms or requirements of a con-

tract between two parties . . . [but] *will not ex-cuse, however, failures of omission, important or otherwise, with regard to the requirements of a substantive regulation having the force and ef-fect of law.*

*Id.* at 94-95, 498 A.2d at 999 (emphasis added).

Dr. Nayak attempts to distinguish *State College Manor* by virtue of the fact that the delay in billing in that case was occasioned by the gross negligence of the facility's bookkeeper, whereas his own office manager made every effort to comply with the billing regula-tions. However, we are constrained by the language of *State College Manor* to conclude that the doctrine of substantial performance is not applicable in the context of noncompliance with substantive regulations to miti-gate against the forfeiture of payment occasioned by "failures of omission . . . important or otherwise." Only if DPW has contributed to these omissions will we find the doctrine applicable.

We next examine the specific difficulties experi-enced by Dr. Nayak in his submission of the claims at issue. We understand the system to require that the coded information on each invoice be internally consis-tent, at the risk of automatic rejection by the computer. For example, the code for any particular medical proce-dure must correspond to a single place of service code and any variation will lead to immediate rejection.

Four patient invoices were rejected because the place of service code designated the out-patient depart-ment rather than the emergency room. Dr. Nayak sub-mits that the out-patient department and the emergen-cy room are one and the same unit in the hospital in which he practices and that the coding system is flawed because it fails to reflect this distinction. Dr. Nayak fur-ther submits that the computer fails to recognize medi-cal procedures appropriately termed "diagnostic sur-gery" and requires that invoices be coded either as "di-

agnosis" or "surgery." The confusion engendered by the inflexibility of the computerized system, he posits, necessitates multiple submission of claims and risks their ultimate rejection as untimely.

We have little doubt that providers suffer confusion and frustration in attempting to obtain payment from DPW. We also have little doubt that the volume of provider claims prohibits manual review. We hold that the burden of learning to work with the system is upon the provider. A particular medical procedure will always have the same place of service code and, once an invoice has been rejected for an improper code, it may be corrected and resubmitted. The provider must learn to recognize the appropriate codes for each procedure he performs.

Dr. Nayak contends that DPW delays in rejecting invoices, thus effectively curtailing the provider's time period for resubmission. The record indicates that certain invoices submitted on November 14, 1983 were not rejected until January 2, 1984; on the other hand, another invoice submitted on March 24, 1984 was rejected on March 30, 1984. We cannot conclude from this record that DPW contributes unnecessarily to any delay.

DPW also rejected an invoice for services rendered to a newborn infant because the child's MA identification number was not indicated. Dr. Nayak contends that parents frequently delay in obtaining MA numbers for their children and that it is not his responsibility to do so. However, the provider is charged with verifying the MA eligibility of his patients. *See* 55 Pa. Code §1101.33(a). Moreover, that regulation specifically states that DPW "may not pay providers for services a provider rendered to persons ineligible on the date of service. . . . If the provider notes any discrepancies, he should call the recipient's [CAO] to verify eligibility."

We cannot fault DPW's rejection of this claim in light of the clear language of the regulation.

Finally, DPW rejected an invoice on the basis that this patient had insurance coverage. Dr. Nayak resubmitted the invoice with a handwritten notation that such coverage was not available. DPW again rejected the invoice, requiring written documentation from the insurer that coverage was not available, in accordance with the provisions of the MA Bulletin.

Dr. Nayak contends that DPW has, on previous occasions, accepted the handwritten notation of his staff as to the availability of insurance coverage. These other invoices are not included in this record and, although Dr. Nayak's office manager testified as to this inconsistent treatment of similar invoices, we are constrained to limit our sanction to a strong admonition. We strongly caution DPW that any inconsistent treatment of invoices subjects providers to the vagaries of an already complex system and cannot be tolerated.

Strict compliance with the regulations pertaining to submission of claims is required where disbursement of public funds is at issue. *State College Manor*. We repeat the words of Justice HOLMES therein quoted: "Men must turn square corners when they deal with the Government." *Id*. at 96, 498 A.2d at 999, *quoting Rock Island, A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920). We fear that the increasingly complex DPW reimbursement procedures will require providers to jump hoops as well as turn corners in dealing with this system, but we are constrained to conclude that Dr. Nayak's substantial performance argument must fail.

Accordingly, the order of DPW is affirmed.

### ORDER

AND NOW, July 21, 1987, the order of the Department of Public Welfare in the above-captioned matter is hereby affirmed.