**GRANE HOSPICE CARE, INC., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 16, 2013.

Decided July 25, 2013.

---

Patrick M. Connelly, Pittsburgh, for petitioner.

Gene K. Cuccarese, Senior Counsel, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Grane Hospice Care, Inc. petitions for review of an adjudication of the Department of Public Welfare ordering it to reimburse the Department for payments it received to provide hospice care services to T.L. (Patient), who was enrolled in Medical Assistance. The Department found that these services were not medically necessary and were not documented in accordance with the applicable regulation.

Grane Hospice contends that it substantially complied with the paperwork requirement and that the care it provided was medically necessary because Patient's overall condition declined during his hospice stay. We affirm.

Grane Hospice provides hospice care to terminally ill patients. Under the Medical Assistance regulations, an individual is considered "terminally ill" if he "has a medical prognosis that his life expectancy is 6 months or less." 55 Pa.Code § 1130.3. Grane Hospice receives payment from the Department for providing hospice care to eligible Medical Assistance recipients.

Patient was diagnosed by his attending physician with end stage chronic obstructive coronary artery disease; a stroke that left him paralyzed on the left side; and esophageal ulcers. After suffering a stroke in 2005, Patient resided in a long-term care facility. In 2008, Patient's attending physician at the long-term care facility where he was housed, Margaret Kush, M.D., and Grane Hospice's medical director, Patrick Lowden, M.D., certified Patient as terminally ill. Grane Hospice admitted Patient on September 16, 2008, and he remained under hospice care until October 22, 2010.[1] The Department paid for Patient's hospice care under the Medical Assistance Program.

In 2011, the Department did a retrospective review of the care Grane Hospice provided to eight patients who had lived more than six months. On December 11, 2011, the Bureau notified Grane Hospice that it would have to reimburse the Department for payments it received to treat these Medical Assistance patients, including Patient.[2]

Grane Hospice appealed, and a hearing was conducted by the Department's Bureau of Hearings and Appeals. At the beginning of the hearing, the Department clarified the reimbursement payments it was seeking. It sought reimbursement of payments made for Patient's care from September 24, 2008, through October 7, 2008, because Grane Hospice did not receive a terminal illness certification from Patient's attending physician until October 7, 2008.[3] The Department also sought reimbursements of payments made for the period of January 17, 2009, through October 22, 2010, because Patient's condition did not decline during that time.[4]

1. Patient was discharged from Grane Hospice in October 2010, but he returned four months later.

2. The demand letter contains six-numbered paragraphs that concern eight different patients and six types of violations. Reproduced Record at 15a–16a (R.R. ——). Paragraph 1 refers to Patient by name and states that he "lacked documentation of a decline." *Id.* at 15a. The remaining paragraphs address other patients. Paragraphs 2 through 6 state that "[t]hree cases" had missing terminal illness forms; "[e]ight cases" had hospice-related services that should have been paid by the hospice provider; "[t]wo cases" did not provide a patient history and physical; "[f]ive cases" provided services less frequently than indicated on the plan of care (payment was not withheld for this claimed violation); and "[f]ive cases" had home health aide supervision visits beyond the fourteen-day limit. *Id.* at 15a–16a.

3. The Department had originally claimed it was owed $6,153.98 for the period of September 24, 2008, through November 9, 2008, because of the incomplete form. The Department did not provide a revised amount owed for September 24, 2008, through October 7, 2008, on the record.

4. The Department had originally claimed it was owed $90,068.72 for the period of December 17, 2008, through October 22, 2010, because hospice care was unnecessary. The Department did not provide a revised amount owed for January 17, 2009, through October 22, 2010, on the record.

The Department presented the testimony of Mark Bates, M.D., who reviewed Patient's records of care received at Grane Hospice. Dr. Bates was aware that Patient had been in a long-term care facility since 2005, but he had no medical records prior to September 2008. Dr. Bates testified that giving Grane Hospice the "benefit of the doubt," Patient's admission to hospice care was appropriate. Reproduced Record at 146a, 152a (R.R. ——). However, Dr. Bates testified that Grane Hospice's medical records for Patient did not document a decline in Patient's condition that would justify a continued need for hospice care. Dr. Bates opined that Grane Hospice was entitled to payment for the first four months of care it gave Patient, but not thereafter. He believed Grane Hospice should have discharged Patient at that point because Patient's condition was "chronic stable," not terminal. R.R. 144a. Dr. Bates explained that a stroke victim can be "chronic stable" for many years, until an event such as a heart attack or another stroke occurs. By contrast, terminal cancer patients can sometimes rally for brief periods but progressively decline overall. Dr. Bates acknowledged that Patient's weight dropped from 120 pounds at admission to 96 pounds at discharge. Dr. Bates explained that weight is only one factor to consider when looking for a decline. He noted that Patient actually gained five pounds during the first four months of his hospice care, at which point he should have been discharged from hospice.

Grane Hospice presented the testimony of its medical director, Dr. Lowden. He explained that Patient was admitted to hospice care for the residual effects of a 2005 stroke. Dr. Lowden testified that Patient's condition declined from January 2009 to October 2011. He lost weight, i.e., 11.58% in six months, despite feeding tubes running 12 hours per day. He lost ten pounds between August and September 2009 because he had trouble tolerating the feeding tube. His leg and neck muscles shortened, which caused pain and led to even higher doses of pain medication. Patient lost strength; became agitated, non-cooperative and suffered hallucinations; went from being able to move from a bed to a chair to being completely bedridden; had breathing problems; and developed ulcers on his heels and left hip from being bedridden. Based on all these factors, Dr. Lowden opined that Patient had experienced a decline sufficient to show that hospice care was appropriate throughout the entire time Patient was at Grane Hospice.

Dr. Lowden testified that Patient was discharged from hospice care in October 2010 at the insistence of the new director of Patient's long-term care facility. Dr. Lowden acknowledged that Patient had problems with his feeding tube when he was admitted to hospice care, and he could not be certain whether the increase in pain medication was caused by increased tolerance to the medication or an increase in pain caused by the muscle contraction.

The Department presented the testimony of Marla Hocker, a nurse, regarding Patient's admission. Hocker explained that Medical Assistance regulations require a hospice provider to obtain a physician's oral certification of terminal illness and then have a written certification signed by the hospice medical director and by the patient's attending physician within eight days of hospice admission. Here, Dr. Lowden signed and dated the form on September 16, 2008, the date of Patient's admission. Dr. Kush, Patient's attending physician, signed the form, but the date of her signature was illegible. However, Dr. Kush faxed the form to Grane Hospice on October 8, 2008. The Department believed, therefore, that Grane Hospice was

not entitled to any payment before October 8, 2008, on which day the legibility of the form ceased to be an issue.

The Bureau's administrative law judge (ALJ) found that Grane Hospice had eight days from Patient's admission, *i.e.*, until September 24, 2008, to obtain a certification signed and dated by Patient's attending physician and Grane Hospice's medical director. Grane Hospice's medical director did so. The attending physician's form, however, was not acceptable because the date was not legible. Because Dr. Kush's faxed form bore a date of October 8, 2008, the ALJ found proper documentation as of that date. The ALJ concluded that Grane Hospice had to reimburse the Department for payments it received from September 24, 2008, through October 7, 2008, a period not supported by the requisite certification.[5]

The ALJ found that during his 26 months of hospice care, Patient experienced weight loss, increased need for pain medication, periods of irritation and noncooperativeness, increased contractures, skin wounds, breathing problems, and decreased mobility. The ALJ credited the testimony of Dr. Bates that these supported a finding of "chronic stable," not terminal, illness. The ALJ rejected Dr. Lowden's testimony that Patient's condition declined sufficiently to justify continuing hospice care from January 17, 2009, through October 22, 2010. Accordingly, the ALJ concluded that Grane Hospice had to reimburse the Department for pay-

ment it received to provide hospice services to Patient during that time.

■ The Department adopted the recommendation of the ALJ in its entirety and without comment. Grane Hospice then petitioned for this Court's review.[6]

Grane Hospice raises two main issues for this Court's consideration. First, Grane Hospice argues that it is entitled to reimbursement for hospice care provided from September 24, 2008, through October 7, 2008, because Grane Hospice "substantially complied" with the requirements regarding the initial Certification of Terminal Illness Form. Second, Grane Hospice argues that the hospice care it provided Patient from January 17, 2009, through October 22, 2010, *i.e.*, after the first four months, was appropriate because Patient showed evidence of a "significant decline" throughout that time.

We turn first to Grane Hospice's argument that it is entitled to reimbursement for hospice care provided from September 24, 2008, through October 7, 2008. Grane Hospice requests reimbursement because it "substantially complied" with the requirements regarding the initial Certification of Terminal Illness Form.

The Medical Assistance regulation at 55 Pa.Code § 1130.22 details the procedure a hospice facility must follow in order to have the first 60 days of hospice care

---

5. There was also an issue as to whether Grane Hospice must reimburse the Department because Grane Hospice failed to periodically complete forms re-certifying Patient as terminal. The ALJ found in Grane Hospice's favor and the Department did not appeal; therefore, that issue is not before us.

6. Our review of the Department's final order is limited to determining whether constitutional rights were violated, whether an error

of law was committed and whether the necessary findings of fact are supported by substantial evidence. *Bussoletti v. Department of Public Welfare*, 59 A.3d 682, 686 n. 2 (Pa. Cmwlth.2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *The Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 992 A.2d 224, 230 n. 6 (Pa.Cmwlth.2010).

covered by Medical Assistance.[7] The hospice facility must obtain a completed certification of terminal illness signed by both the hospice's medical director and the patient's attending physician. 55 Pa.Code § 1130.22(1). The hospice facility is to obtain a completed form within two calendar days after hospice care is initiated. *Id.* However, if that is not possible, hospice care will still be covered if the hospice facility obtains oral certification of terminal illness from the doctors within two days after initiating hospice care and obtains "a completed and signed certification form within 8 calendar days after hospice care is initiated." 55 Pa.Code § 1130.22(2).

Grane Hospice argues that it substantially complied with those requirements. It had oral certification from the doctors within 2 days of Patient's hospice admission; written and timely certification from the medical director; and written certification from the attending physician. Grane Hospice argues that it has no control over the attending physician, and it is unfair to penalize Grane Hospice because the attending physician wrote down a date

that is illegible. The Department responds that substantial compliance is not enough.

This Court has held that substantial compliance with Medical Assistance regulations is not sufficient, but, rather "[s]trict compliance with the regulations pertaining to submission of claims is required where disbursement of public funds is at issue.... Men must turn square corners when they deal with the Government." *Nayak v. Department of Public Welfare,* 107 Pa.Cmwlth. 504, 529 A.2d 557, 562 (1987) (internal citation and quotation omitted). Because Grane Hospice did not have a form that fulfilled the requirements of 55 Pa.Code § 1130.22 until October 8, 2008, Grane Hospice is not entitled to payment for hospice care rendered from September 24, 2008, through October 7, 2008.

Grane Hospice next argues that it should be reimbursed for the remainder of the care it provided to Patient. The Medical Assistance regulations state that in order to be covered, hospice services

shall be reasonable and necessary for the palliation or management of the

---

7. It states, in relevant part, as follows:

There is no limit on the available number of days of hospice coverage for a recipient who meets the eligibility requirements of § 1130.21 (relating to recipient eligibility requirements) and who is certified as being terminally ill in accordance with the following procedures:

(1) *Basic requirement.* For the first 60–day period of hospice coverage, the hospice obtains, within 2 calendar days after hospice care is initiated, a completed certification of terminal illness form signed by:

(i) The medical director of the hospice or the physician member of the hospice interdisciplinary group.

(ii) The recipient's attending physician if the recipient has an attending physician.

(2) *Exception.* For the first 60–day period of hospice coverage, if the hospice cannot obtain a completed and signed certifica-

tion of terminal illness form within 2 calendar days after hospice care is initiated, it *shall obtain* oral certification within 2 calendar days and *a completed and signed certification form within 8 calendar days* after hospice care is initiated.

(i) *Oral Certification.* Hospice staff persons shall make an appropriate entry in the recipient's medical records as soon as they receive an oral certification.

(ii) *Written Certification.* The hospice *shall obtain* within 8 calendar days after hospice care begins, a completed certification of terminal illness form signed by the following:

(A) The medical director of the hospice or the physician member of the hospice interdisciplinary group.

(B) The recipient's attending physician, if the recipient has an attending physician.

55 Pa.Code § 1130.22(1)-(2) (emphasis added).

symptoms of the terminal illness as well as related conditions.

55 Pa.Code § 1130.61. Under the regulation at 55 Pa.Code § 1130.22(3), there is no limit on the duration of hospice coverage. The hospice provider is required only to complete a new certification of terminal illness form every 60 days.[8] The parties agree that this regulation does not state that there must be a decline in the patient's condition for the "certification of terminal illness" that the hospice must obtain to continue hospice care. 55 Pa.Code § 1130.22(3). The Department's addition of "decline" to the regulation is somewhat troubling, particularly since there was no evidence presented that Grane Hospice provided Patient with anything other than palliative care, which is defined as "reasonable and necessary" for a terminally ill patient. However, the issue is not before us.

■■■■ Grane Hospice argues that the adjudication is not consistent with the record because there is ample evidence in the record to document a decline in Patient's condition. Grane Hospice contends that requiring it to refund monies already paid by the Department after Grane Hospice provided competent hospice care is unjust. The Department responds that Grane Hospice is asking this Court to reweigh the evidence, something that we cannot do. It is axiomatic that this Court may not disturb determinations of credibility and evidentiary weight on appeal. *Renee v. Department of Public Welfare,* 702 A.2d 575, 579 (Pa.Cmwlth.1997).

The Department accepted the factual finding of the ALJ, who credited Dr. Bates' medical opinion, that Patient was "chronic stable" and did not show a decline toward death. This factual finding cannot be disturbed on appeal. *Winston v. Department of Public Welfare,* 675 A.2d 372, 377 (Pa.Cmwlth.1996). Because Grane Hospice does not challenge the legal premise that a valid certification each 60 days requires a decline, we are bound by the Department's legal conclusion.

For these reasons, the order of the Department is affirmed.

### *ORDER*

AND NOW, this 25th day of July, 2013, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated June 19, 2012, in the above-captioned matter is hereby AFFIRMED.

---

8. The regulation states as follows:

(3) *Subsequent periods.* For each subsequent 60–day period [after the initial 60–day period], the hospice [must obtain], within 2 calendar days after the beginning of that period, a certification of terminal illness form completed and signed by the medical director of the hospice or the physician member of the hospice's interdisciplinary group.

55 Pa.Code § 1130.22(3).