Jean M. Bootes, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued September 17, 1981, before Judges MENCER, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*William Tabbart,* with him *Gretchen Regenhardt,* for petitioner.

*Mary Frances Grabowski,* for respondent.

OPINION BY JUDGE WILLIAMS, JR., January 19, 1982:

Petitioner, Jean M. Bootes, appeals from a fair hearing decision of the Department of Public Welfare (DPW). In that decision, the DPW denied Petitioner's appeal from a determination of the County Assistance Office (CAO) which rejected Petitioner's application, or "good cause" claim, to be excused from pursuing a support action against the putative father of one of her children.

Petitioner is a recipient of Aid to Families with Dependent Children (AFDC) for herself and two minor children. On February 26, 1980, Ms. Bootes

instituted proceedings against Daniel Kay, the putative father of her son, Daniel A. Kay, to obtain child support. According to Ms. Bootes, the institution of the support proceedings was followed by personal harassment, in the form of obscene phone calls, banging noises on her doors and windows, and lewd and accusatory letters. In March, 1980, Petitioner contacted the CAO to report the incidents of harassment. Shortly thereafter, she visited the CAO to inquire about initiating a good cause claim to excuse her from pursuing the support action against Mr. Kay.[1]

On March 18, 1980, Petitioner was notified by letter that she had twenty (20) days to provide sworn statements to establish her good cause claim. That same day, the CAO instructed the Bureau of Claim Settlement to discontinue the support action against Mr. Kay until further notice. On March 27, 1980, Ms. Bootes submitted the requested documentation. A notarized letter signed by Ms. Bootes and several other individuals[2] was sent to the CAO. In that letter, Ms. Bootes stated that she and her children had "become the object of undue verbal harassment and duress since initiating the support proceedings." That information was forwarded to the Bureau of Claim Settlement which subsequently approved Petitioner's good cause claim. On May 8, 1980, upon review of Petitioner's good cause claim, the CAO requested additional documentary evidence to substantiate the application. When the Petitioner advised the CAO that no additional evidence was available, her claim was denied.

Petitioner filed a timely appeal from the CAO's decision, and a fair hearing was held on the matter. On

---

[1] The filing of a good cause claim to excuse a parent from proceeding with a paternity or support action is required by 55 Pa. Code §187.23(a)(3).

[2] Those other individuals were Ms. Bootes' mother, her sister-in-law, and her landlady.

August 6, 1980, the Hearing Examiner denied Petitioner's appeal, ruling that Petitioner had failed to establish that the pursuit of the support action would cause her to "suffer sufficient mental distress so as to impair her ability to care for her children."[3] The instant appeal to this Court followed.

Petitioner, in urging this Court to reverse the decision of the hearing officer, argues that she presented ample evidence to justify her refusal to pursue a support action against the putative father of her child. Thus, she contends, the Examiner erred in denying her appeal and holding that she had not established her right to a good cause exception.

The Pennsylvania Public Assistance Manual governing eligibility for AFDC applicants dictates that, "as a condition of continued eligibility for AFDC, each caretaker/relative . . . with whom the child is living will be required to cooperate with the Department in identifying and locating the absent parent, establishing the identity of a child born out of wedlock, and obtaining support payments, unless a claim for 'good cause' is pending or determined to exist. . . . "[4]

The Manual sets forth guidelines for deciding the presence of good cause so as to excuse a caretaker/relative from cooperating in the institution of a paternity or support action. It is stated therein that, "cooperation requirements will be waived if the caretaker/relative can establish that he has good cause for refusing to take support or paternity action or both against the absent parent or putative father, because to do so would not be in the 'best interest of the

---

[3] DPW regulations provide: "In determining 'good cause' based on physical or emotional harm to the parent, the circumstances must be of such a serious nature that they would reduce the capacity of the applicant caretaker/relative to care for the child or children adequately." 55 Pa. Code §187.23(a)(4)(iii).

[4] 55 Pa. Code §187.23(a)(2).

child.' ''[5] Specifically enumerated in the Manual are those circumstances under which cooperation in the institution of a support or paternity action may be against the best interest of the child. Amongst the situations listed is that in which serious physical or emotional harm would result to the mother with whom the child is living to the degree that it reduces her capacity to care for the child adequately.[6]

The burden of proving the existence of a good cause claim rests with the recipient caretaker/relative, and essential to that proof is corroborative evidence.[7] In the instant case, Ms. Bootes alleged in her good cause claim that, the harassment with which she was victimized, due to her pursuit of the support action, caused her to experience nervousness and anxiety to such a degree that she was no longer capable of properly caring for her children.

At the fair hearing, in support of her allegation, Petitioner presented the testimony of her mother, sister-in-law, and landlady. Those individuals testified that since the inception of the incidents of harassment, Petitioner's emotional well-being has been impaired, thereby affecting her ability to adequately care for her children. Additionally, Petitioner herself testified that she had visited her personal physician to secure a prescription for a tranquilizer to calm her nerves. She offered to submit a statement from her doctor corroborating her testimony. The hearing record was left open for five (5) work days for the submission by Petioner of a report from her personal physician. However, no doctor's statement was ever received. Therefore, the Hearing Examiner, after judging the probative value of the evidence presented, issued a ruling on Petitioner's appeal. The Hearing Examiner denied

[5] 55 Pa. Code §187.23(a)(3).
[6] 55 Pa. Code §187.23(a)(3)(i)(A)(II).
[7] 55 Pa. Code §187.23(a)(3).

the appeal, holding that Petitioner had not offered sufficient evidence to establish her right to a good cause exception.

Under the DPW regulations, the County staff is responsible for making a determination as to the existence of good cause. The good cause determination is to be made on a case-by-case basis, on the weight, sufficiency, and quality of the gathered evidence. The final decision requires a subjective judgment on the part of the Hearing Examiner.[8] The Hearing Examiner is empowered to determine questions of evidentiary weight and matters of credibility. Thus, absent a capricious disregard of evidence, the Hearing Examiner's conclusion will not be disturbed. *Nunley v. Department of Public Welfare,* 54 Pa. Commonwealth Ct. 10, 419 A.2d 240 (1980). Our review of the record in the case at bar discloses no capricious disregard of competent evidence on the part of the Hearing Examiner.

Accordingly, we affirm the decision denying Petitioner's appeal.

### ORDER

AND Now, the 19th day of January, 1982, the order of the Department of Public Welfare is affirmed.

This decision was reached prior to the expiration of the term of office of Judge PALLADINO.

---

[8] 55 Pa. Code §187.23(a)(4).