**Michele RENEE, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 25, 1997.

Decided Oct. 16, 1997.

Michele Renee, petitioner, for herself.

Diana C. Tarvin, Assistant Counsel, Harrisburg, for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

KELLEY, Judge.

Michele Renee appeals *pro se* from an order of the Department of Public Welfare, Bureau of Hearings and Appeals (DPW), which affirmed the decision of a hearing officer denying Renee's appeal from a decision of the Lehigh County Assistance Office (CAO). The CAO had denied Renee's application for cash assistance. We affirm.

The facts of this case may be summarized as follows. On March 31, 1996, Renee submitted an application to the CAO for cash assistance, food stamps and medical assistance for herself and her five-year old son. In her application, Renee named the father of her child who was born out of wedlock.

In response to Renee's application for assistance, an interview was held with the CAO on April 19, 1996. At the interview, Renee claimed that she had "good cause" for refusing to cooperate in obtaining child support from her son's father as required under the Public Welfare Code,[1] the Support Law,[2] and

1. Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101—1411. Section 432.7 of the Public Welfare Code, *added by* the Act of July 15, 1976, P.L. 993, *as amended*, provides, in pertinent part:

§ 432.7. Determination of paternity and enforcement of support obligations

In accordance with a child support plan approved by the Federal Government, the department shall have the power and its duty shall be to:

(a) Require as a condition of eligibility for assistance that the applicant or recipient:

\* \* \*

(2) Assign to the department on forms provided by the department such support rights as the applicant or recipient may have individually or on behalf of any family member who is a part of the assistance group.

(3) Cooperate with the department in establishing the paternity of a child with respect to whom assistance is claimed unless the department determines that the applicant or recipient has good cause for failing to do so.

(4) Cooperate in obtaining support payments for such applicant or recipient and for a child with respect to whom such assistance is claimed or in obtaining any other payment or property due such applicant, recipient or such child unless the department determines that the applicant or recipient has good cause for failing to do so.

62 P.S. § 432.7(a)(2), (3), (4).

2. Act of June 24, 1937, P.L.2045, *as amended*, 62 P.S. §§ 1971—1976. Section 1973 of The Support Law provides, in pertinent part:

§ 1973. Relatives liable for the support of indigent person; procedure to enforce support

(a) The husband, wife, child, (except as hereinafter provided), father and mother of every indigent person, whether a public charge or not, shall, if of sufficient financial ability, care for and maintain, or financially assist, such indigent person at such rate as the court of the county, where such indigent person resides shall order or direct.

62 P.S. § 1973(a).

In addition, section 1975 of the Support Law provides, in pertinent part:

§ 1975. Recovery of moneys due persons publicly cared for or assisted

(a) Whenever any person shall become a public charge or receive public assistance, the public body or public agency caring for or furnishing such assistance may sue for and recover any sum of money due such person;

(b) Such suit shall be brought in the name of such person for the use of such public body or public agency. *Proof that the person to whom such money is due became a public charge, or was publicly assisted, shall be conclusive of the right to recover whatever may be legally due*

the Pennsylvania Code (Code).[3] At the interview, Renee signed a form explaining the

such person. If the amount due shall have been reduced to judgment, the public body or public agency may be substituted as plaintiff in the judgment. If the sum due is founded on an order or decree of court, the public body or public agency shall have the right to recover the same.

62 P.S. § 1975(a), (b).

3. Section 187.21(a) of the Code provides:

**§ 187.21. Policy.**

(a) *Legal bases for support requirements.* The Support Law (62 P.S. §§ 1971–1977) provides authority to the courts to order or direct support to needy persons from legally responsible relatives (LRR) upon petition from the needy person or the Department. The Public Welfare Code (62 P.S. §§ 101–1501) requires the Department to grant assistance only to those persons who are without sufficient resources to maintain themselves. By law, then, LRR's will be a potential resource to persons applying for or receiving assistance. The Support Law and the Public Welfare Code (62 P.S. §§ 101–1503) mesh to make it mandatory to explore and develop the resource that an LRR may provide to a client.

55 Pa.Code § 187.21(a).

In addition, section 187.23 of the Code provides, in pertinent part:

**§ 187.23. Requirements.**

(a) *Unemancipated minor children.* Because the responsibility of a parent for an unemancipated minor child is seen as greater than that for the spouse, separate requirements have been established for securing support from absent parents for their children. The requirements will be applicable to recipients or applicants for AFDC when the child's eligibility is based on absence of a parent from the home and, when the child is born out-of-wedlock, without regard to whether paternity has been established.

\* \* \*

(2) *Cooperation.* As a condition of continued eligibility for AFDC ... a caretaker/relative with whom the child is living will be required to cooperate with the Department in identifying and locating the absent parent, establishing the paternity of a child born out-of-wedlock and obtaining support payments, unless a claim for good cause is pending or determined to exist, as provided in paragraph (3). The term Cooperate includes the following:

(i) Appearing at the offices of the local CAO or DRS as necessary to perform the following:

(A) Provide verbal or written information or documentary evidence known to, possessed by or reasonably obtainable by the applicant or recipient caretaker/relative that is relevant to achieving support from the absent parent.

(B) Sign the necessary legal forms required to file petitions for support.

(ii) Appearing as a witness at court or other hearings or proceedings necessary to achieve support from the absent parent.

\* \* \*

(3) *Good cause as an exception to cooperation requirements.* Cooperation requirements will be waived if the caretaker/relative establishes that he has good cause for refusing to take support or paternity action or both against the absent parent or putative father, because to do so would not be in the best interest of the child. . . .

(i) Circumstances under which cooperation may be against the best interest of the child are as follows:

(A) The client's pursuit of paternity or support action is reasonably expected to result in either of the following:

(I) Serious physical or emotional harm to the child.

(II) Serious physical or emotional harm to the mother ... with whom the child is living to the degree that it reduces his capacity to care for the child adequately.

\* \* \*

(iii) The applicant or recipient caretaker/relative has the burden of proving the existence of his good cause claim and must provide the corroborative evidence required to support the claim within 20 days from the day the claim was made. In exceptional cases, when it has been determined, with supervisory approval, that additional time will be needed by the client because of difficulty in obtaining the evidence, a reasonable additional period of time will be granted.

\* \* \*

(4) *Determining good cause for refusing to cooperate.* In cases where the applicant or recipient caretaker/relative initiates a claim of good cause as an exception to cooperation requirements, the County staff will make a finding as to whether good cause exists. This finding will be based on the corroborative evidence supplied by the client and the investigation if deemed necessary. The good cause determination will be made on a case-by-case basis and the final decision requires a subjective judgment on the part of the County staff. The decision will be based on the weight, sufficiency, and quality of the gathered evidence.

\* \* \*

(iii) In determining good cause based on physical or emotional harm to the parent, the circumstances must be of a serious nature that they would reduce the capacity of the applicant/caretaker/relative to care for the child or children adequately. In situations where the good cause claim is based solely on anticipation of emotional harm to the child or caretaker/relative, the corroborative or documentary evidence provided by the client to support this claim should indicate the emotional health history of the caretaker/relative of the child, the present emotional health status, the intensity and probable duration of the emotional impair-

requirement to cooperate in obtaining child support, and the right to claim good cause for refusing to cooperate in obtaining the support. The form also indicated that, pursuant to 55 Pa.Code § 187.23(a)(3)(iii), Renee was required to provide the CAO with the corroborative evidence to support her claim of good cause within twenty days.

By letter dated April 30, 1996, Renee filed a "good cause" petition with the CAO explaining her reasons for refusing to cooperate in obtaining the support from her child's father. In the petition, Renee claimed that the pursuit of support would result in potential physical and emotional harm to herself and her son, and outlined a history of the abusive relationship she had with her son's father. The petition also listed a number of instances of harassment which Renee had endured that were perpetrated by other individuals, purportedly done at the bidding of her child's father.

The CAO requested that Renee submit additional documentation in support of her "good cause" petition, and extended the time for its submission to June 20, 1996. When the additional documentation was not received, the CAO sent Renee a notice on August 7, 1996 which indicated that "good cause" had not been established and found her to be ineligible for the cash assistance benefit. The other benefits requested for her and child's needs were continued.

On August 30, 1996, Renee sent the CAO a letter appealing this determination. In the letter, Renee claimed that the DPW has used, and continues to use, compulsion to obtain paternity disclosures which placed her at risk for violence, thereby violating her Fifth Amendment rights. In particular, Renee initially asserted that the disclosures required by DPW placed her at risk for physical and psychological harm. In support of this contention, Renee cited statistics relating to physical abuse occasioned by women in the United States at the hands of an abusive partner. Renee submitted that the provisions of DPW's "good cause" policy prevent-

ed an individual from terminating an abusive relationship before it escalated into the type of physical violence documented in those statistics.

In the letter, Renee also asserted that the methods used by DPW to discourage silence on paternity disclosures constitutes physical and psychological compulsion. Renee noted that as a result of her failure to cooperate, the cash benefits available to her family decreased by 33%. She also indicated that since filing for good cause, she had endured further instances of harassment. Renee stated that she and her son had suffered physical harm as a result of these economic sanctions and harassment.

In conclusion, the letter stated:

> In summary, the Pennsylvania Department of Public Welfare has used, and continues to use, compulsion to obtain paternity disclosures which place Appellant at risk of violence, thereby violating her Fifth Amendment rights. The alarming statistics on domestic abuse in America suggest that in cases where an absent parent does not enjoy formal or informal visitation privileges, a custodial parent should not be coerced to make paternity disclosures against their better judgment. The Appellant seeks to establish a legal precedent for limiting the power of the Pennsylvania Department of Public Welfare to compel paternity disclosures in such cases, and [the] restoration of her cash assistance benefits.

Exhibit 2, p. 4.

On November 5, 1996 a hearing of the appeal was conducted by telephone before a hearing examiner. At the hearing, a representative from the CAO outlined the procedure which occurred from Renee's filing for benefits to the determination that she was ineligible based on her failure to establish "good cause" for failing to cooperate in obtaining support from her child's father. At the hearing Renee again recounted the harassment she has experienced, and assert-

ment.... In making the good cause determination, the County staff will evaluate the evidence in relation to the degree of cooperation that will be required of the caretaker/relative as well as the extent to which the client will be involved in the support activity.
55 Pa.Code § 187.23(a)(2), (3), (4).

ed that compelling her to seek support violated her Fifth Amendment rights.

On December 5, 1996, the hearing officer issued an order and adjudication denying Renee's appeal. In the Adjudication, the hearing officer noted:

> The Appellant is appealing from a decision of the CAO to remove the Appellant from the cash assistance grant for failure to cooperate in seeking child support from the father of her child. The Appellant contends that it would be dangerous for her to seek such support. The Appellant presented information in her letter of April 30, 1996 which the Appellant felt justified her claim of good cause. However, according to 55 PA Code 187.23(a)(3) and 55 PA Code 187.23(a)(4)(iii), the Appellant has failed to establish good cause for not seeking support from the father of her child.
>
> The Hearing Officer concludes that the decision of the CAO is correct. The appeal of the Appellant is, therefore, denied.

Exhibit 4, p. 4.

On December 10, 1996, the DPW issued an order affirming the hearing officer's decision. Renee then filed the instant appeal in this court.

On appeal, Renee claims: (1) the disclosures regarding paternity and support required by the DPW violate her Fifth Amendment rights; and (2) the DPW did not consider all available information in evaluating her "good cause" petition.

■ We initially note that, on appeal, this court's scope of review is limited to a determination of whether the adjudication by the DPW is in accordance with the law, whether the findings of fact are supported by substantial evidence, and whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Harston Hall Nursing and Convalescent Home, Inc. v. Com., Department of Public Welfare*, 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986). In addition, as the fact finder, the hearing officer's role is to assess the credibility of each witness and to give whatever weight he determines appropriate to their testimony. *Gomez v. Com., Department of Public Welfare*, 111 Pa.Cmwlth. 234, 533 A.2d 826 (1987). *See also Geriatric & Medical Services, Inc. v. Department of Public Welfare*, 151 Pa.Cmwlth. 209, 616 A.2d 746 (1992) (The hearing officer is the ultimate fact finder in these matters, and must resolve conflicts in testimony and may reject the testimony of any witness). Thus, the hearing officer is empowered to determine questions of evidentiary weight and matters of credibility and, absent a capricious disregard of evidence, the hearing officer's conclusion will not be disturbed on appeal. *Bootes v. Com., Department of Public Welfare*, 64 Pa. Cmwlth. 173, 439 A.2d 883 (1982).

■ In this appeal, Renee first claims that the disclosures regarding paternity and support required by the DPW violate her Fifth Amendment rights.

As the United States Supreme Court has noted:

> The [Aid to Families with Dependent Children (AFDC) program of the Social Security Act of 1935, 42 U.S.C. §§ 601 *et seq.*] is designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them. A principal purpose of the program, as indicated by 42 U.S.C. § 601, is to help such parents and relatives "to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection...." The "program is based on a scheme of cooperative federalism," *King v. Smith*, 392 U.S. 309, 316, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). It is financed in large measure by the Federal Government on a matching-fund basis, and participating States must submit AFDC plans in conformity with the [Social Security] Act and the regulations promulgated thereunder.... The program is, however, administered by the States, which are given broad discretion in determining both the standard of need and the level of benefits.

*Shea v. Vialpando*, 416 U.S. 251, 253, 94 S.Ct. 1746, 1750, 40 L.Ed.2d 120 (1974).

As noted by a Federal Court of Appeals, in dispensing assistance under this program:

[t]he Social Security Act requires each state participant in the AFDC program to implement a plan designed to maximize the collection of child support payments from absent parents. *See* 42 U.S.C. § 602(a)(27) (1988); *see also* 42 U.S.C. §§ 651–669 (1988) (Child Support Enforcement Act). One purpose of this requirement is to reduce welfare costs by increasing child support collections. *See* S.Rep. No. 1356, 93d Cong., 2d Sess. 13–14, *reprinted in* 1974 U.S.Code Cong. & Admin. News 8133, 8145–46 ("The problem of welfare in the United States is, to a considerable extent, a problem of the non-support of children by their absent parents.") To this end, each state AFDC plan must require AFDC recipients to assign to the state their rights to child support as a condition of eligibility for aid. *See* 42 U.S.C. § 602(a)(26)(A) (1988).[4] Child support

4. Section 602 of the Social Security Act provides, in pertinent part:

(a) **Contents**
A State plan for aid and services to needy families with children must—

\*   \*   \*

(26) provide that, as a condition of eligibility for aid, each applicant or recipient will be required—
(A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf for in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed;
(B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed, and (ii) in obtaining support payments for such applicant and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the child on whose behalf aid is claimed; and that, if the relative with whom a failure to comply with the requirements of subparagraphs (A) and (B) of this paragraph, any aid for which such child is eligible will be provided in the form of protective payments. . . .
42 U.S.C. § 602(a)(26)(A), (B).

5. The *relevant federal regulations provide,* in pertinent part:

payments ordinarily are made directly to the state child support collection agency, which distributes them according to a formula set forth in the statute and regulations. *See* 42 U.S.C. § 657 (1988); 45 C.F.R. § 302.51(b) (1990).

*Zeien v. Palmer*, 955 F.2d 506, 509 (8th Cir.1992).

Thus, Congress enacted section 602(a)(26) of the Social Security Act to reduce the costs of providing assistance to those in need. *Id.* Moreover, the provisions of the Public Welfare Code, the Support Law, and the Pennsylvania Code which require Renee, in order to be eligible for assistance, to assign all rights to child support and to cooperate in obtaining such support, are required by section 602(a)(26) and the relevant federal regulations [5] in order for Pennsylvania to participate in the program.

**§ 232.2 Child support program; State plan requirements.**
The State plan must specify that the State:
(a) Has in effect a plan approved under Part D of title IV of the [Social Security] Act that, consistent with the provisions of this title, ensures that all applicants for and recipients of AFDC are encouraged, assisted, and required to cooperate in the establishment of paternity and the enforcement of child support obligations, and are notified of the paternity establishment and child support services for which they may be eligible; and
(b) Operates a *child support program in* conformity with such plan.
45 C.F.R. § 232.2.
**§ 232.11 Assignment of rights to support.**
(a) The State plan must provide that:
(1) As a condition of eligibility for assistance, each applicant for or recipient of AFDC shall assign to the State any rights to support from any other person as such applicant or recipient may have;
(i) In his own behalf or in behalf of any other family member for whom the applicant or recipient is applying for or receiving assistance; and
(ii) Which have accrued at the time such assignment is executed.
(2) If the relative with whom a child is living fails to comply with the requirements of paragraph (a)(1), (2) or (3) of this section, such relative shall be denied eligibility without regard to other eligibility factors.
(3) If the relative with whom a child is living is found to be ineligible for assistance because of failure to comply with the requirements of paragraph (a)(1), (2), or (3) of this section, any aid for which such child is eligible (determined without regard to the needs of the ineligible

In our consideration of Renee's constitutional claim, the United States Supreme Court has stated that:

> [t]he precepts that govern our review of [such] challenges to this program are similar to those we have applied in reviewing challenges to other parts of the Social Security Act:
>
> > "[O]ur review is deferential. 'Governmental decisions to spend money to improve the general public welfare in one way and not another are "not confided to the courts. The discretion belongs to Congress unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." ' "

This standard of review is premised on Congress' "plenary power to define the scope and the duration of the entitlement to ... benefits, and to increase, to decrease, or to terminate those benefits based on its appraisal of the relative importance of the recipients' needs and the resources available to fund the program."

*Bowen v. Gilliard,* 483 U.S. 587, 598, 107 S.Ct. 3008, 3015, 97 L.Ed.2d 485 (1987).

In conducting this limited review and rejecting claims such as Renee's raised under the Fifth Amendment, the Supreme Court noted that:

> Under our structure of Government, however, it is the function of Congress—not the courts—to determine whether the savings realized [by a cost-saving amendment to the AFDC program], and presumably used for other critical governmental functions, are significant enough to justify the costs to the individuals affected by such reductions [in assistance]. The Fifth Amendment "gives the federal courts no power to impose upon [Congress] their views of what constitutes wise economic or social policy," by telling it how "to reconcile the demands of ... needy citizens with the finite resources available to meet those ·demands." ... Unless the Legislative Branch's decisions run afoul of some constitutional edict, any inequities created by such decisions must be remedied by the democratic processes.

*Id.,* 483 U.S. at 596–97, 107 S.Ct. at 3014–15.

In light of the foregoing, it is clear that the Fifth Amendment provides Renee with no

---

relative) will be provided in the form of protective payments as described in § 234.60 of this chapter.
45 C.F.R. § 232.11.

**§ 232.12 Cooperation in obtaining support.**

The State plan must meet all requirements of this section.

(a) The plan shall provide that as a condition of eligibility for assistance, each applicant for or recipient of AFDC will be required to cooperate (unless good cause for refusing to do so is determined to exist in accordance with §§ 232.40 through 232.49 of this chapter) with the State in:

(1) Identifying and locating the parent of a child for whom aid is claimed;

(2) Establishing the paternity of a child born out of wedlock for whom aid is claimed;

(3) Obtaining support payments for the applicant or recipient and for a child for whom aid is claimed; and

(4) Obtaining any other payments or property due the applicant or recipient or the child.

(b) The plan shall specify that *cooperate* includes any of the following actions that are relevant to, or necessary for, the achievement of the objectives specified in paragraph (a) of this section:

(1) Appearing at an office of the State or local agency or the child support agency as necessary to provide verbal or written information, or documentary evidence, known to, possessed by, or reasonably obtainable by the applicant or recipient;

(2) Appearing as a witness at judicial or other hearings or proceedings;

(3) Providing information, or attesting to the lack of information, under penalty of perjury; and

(4) Paying to the child support agency any support payments received from the absent parent after an assignment under § 232.11 has been made....

(c) The plan shall provide that, if the child support agency notifies the State or local agency of evidence of failure to cooperate, the State or local agency will act upon that information to enforce the eligibility requirements of this section.

(d) The plan shall provide that, if the caretaker relative fails to cooperate as required by paragraphs (a) and (b) of this section, the State or local agency will:

(1) Deny assistance to the caretaker relative without regard to other eligibility factors; and

(2) Provide assistance to the eligible child in the form of protective payments as described in § 234.60 of this chapter. Such assistance will be determined without regard to the needs of the caretaker relative.

45 C.F.R. § 232.12.

protection from the provisions of the Public Welfare Code, the Support Law, and the Pennsylvania Code requiring her assignment of, and cooperation in obtaining, support from her child's father. These Pennsylvania statutes and regulations were enacted in compliance with the relevant federal statutes and regulations, and are required in order for Pennsylvania to participate in the federal AFDC program.

Moreover, section 432.7(a)(4) of the Public Welfare Code and section 187.23(a)(3) of the Pennsylvania Code, 55 Pa.Code § 187.23(a)(3), specifically allow Renee to avoid cooperating in obtaining such support based on a corroborated showing of "good cause", *i.e.*, that seeking such support would not be in the best interests of her child. Having failed to adequately demonstrate the application of this exclusion, Renee cannot now find protection from the statutory requirements for receiving assistance under the Fifth Amendment.

■ Renee next claims that the DPW did not consider all available information in evaluating her "good cause" petition.

As we have previously noted:

The Pennsylvania Public Assistance Manual governing eligibility for AFDC applicants dictates that, "as a condition of continued eligibility for AFDC, each caretaker/relative ... with whom the child is living will be required to cooperate with the Department in identifying and locating the absent parent, establishing the identity of a child born out of wedlock, and obtaining support payments, unless a claim for 'good cause' is pending or determined to exist...." [55 Pa.Code § 187.23(a)(2).]

The Manual sets forth guidelines for deciding the presence of good cause so as to excuse a caretaker/relative cooperating in the institution of a paternity or support action. It is stated therein that, "cooperation requirements will be waived if the caretaker/relative can establish that he has good cause for refusing to take support or paternity action or both against the absent parent or putative father, because to do so would not be in the 'best interest of the child.'" [55 Pa.Code § 187.23(a)(3).] Specifically enumerated in the Manual are

those circumstances under which cooperation in the situation of a support or paternity action may be against the best interest of the child. Amongst the situations listed is that in which serious physical or emotional harm would result to the mother with whom the child is living to the degree that it reduces her capacity to care for the child adequately. [55 Pa.Code § 187.23(a)(3)(i)(A)(II).]

The burden of proving the existence of a good cause claim rests with the recipient caretaker/relative, and essential to that proof is corroborative evidence. [55 Pa. Code § 187.23(a)(3).]

*Bootes,* 439 A.2d at 884–85.

In support of her claim, Renee submits that, although she did not present any corroborative evidence to support her good cause petition at the hearing, she made reference to corroborative evidence in her petition. In particular, Renee submits that at the time of her application for benefits, she was deemed to be temporarily disabled by the DPW based on a signed statement provided by her physician. In addition, she indicates that, at the time of her application, her son had been under the care of a pediatric rehabilitative team due to his disabilities, and the DPW was aware of these disabilities and had access to his medical records as his care was paid for by Medical Assistance.

However, neither Renee's application for assistance, her "good cause" petition, nor her appeal of the CAO's decision to the DPW indicate that the DPW had in its possession documents which could substantiate her claim. In addition, at the hearing before the hearing examiner, Renee did not present any evidence to corroborate her petition, and never indicated that corroborative evidence existed and was in the DPW's possession.

Clearly, the burden of proving the existence of a "good cause" claim rested with Renee, and she was required to present corroborative evidence of her claim. 55 Pa.Code § 187.23(a)(3); *Bootes.* To satisfy this burden, Renee could have either obtained and presented the corroborative evidence herself, or, at a minimum, notified someone at some stage of these proceedings that this evidence

existed and was in the possession of the DPW. However, by failing to either present any corroborative evidence to support her petition at the hearing, or mention the existence of such evidence in her application, petition, appeal or at the hearing, we cannot find that the DPW erred in affirming the hearing officer's decision.

Accordingly, the order of the DPW is affirmed.

## ORDER

NOW, this 16th day of October, 1997, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated December 10, 1996, at No. 390112569–004, is affirmed.