**GRANE HOSPICE CARE, INC., Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 16, 2013.

Decided July 25, 2013.

Reconsideration and Reargument En Banc Denied Sept. 13, 2013.

---

imburse the Department $71,630.25. This amount represented payments the Department made to Grane Hospice for 18 months of service it provided to R.H. (Patient) who was enrolled in Medical Assistance. The Department ordered this reimbursement because it found that Patient was not at the end of his life and, thus, the hospice services he received in his home were not medically necessary. Grane Hospice counters that it complied with the regulation relating to the determination of an individual's eligibility for hospice care and that no one can know with certainty whether a person will die within six months. Concluding that the record established that Grane Hospice complied with the regulations for determining eligibility for hospice care, we reverse the Department's adjudication.

Grane Hospice provides hospice care to terminally ill patients. Under the Medical Assistance regulations, an individual is considered "terminally ill" if he "has a medical prognosis that his life expectancy is 6 months or less." 55 Pa.Code § 1130.3. Grane Hospice is enrolled in the Medical Assistance Program and receives payment from the Department for providing hospice care to eligible Medical Assistance recipients.

Grane Hospice admitted Patient to its care on October 23, 2008, and continued to provide him hospice care until April 15, 2010. It then admitted Patient for hospice care a second time, for a period from August 19, 2010, through February 28, 2011. The Department paid Grane Hospice for both periods of care. Thereafter, it reviewed Grane Hospice's records and determined that Patient should not have been admitted to Grane Hospice either time. On December 11, 2011, the Department sent a letter to Grane Hospice demanding, *inter alia,* reimbursement of

---

Patrick M. Connelly, Pittsburgh, for petitioner.

Gene K. Cuccarese, Senior Counsel, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge (P.) and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Grane Hospice Care, Inc. petitions for review of an adjudication of the Department of Public Welfare directing it to re-

$71,630.25, for the first period of care and $26,804.65 for the second period. Grane Hospice appealed, and a hearing was held by the Department's Bureau of Hearings and Appeals.

In its demand letter, the Department cited a number of state and federal regulations to support its claim for reimbursement from Grane Hospice regarding eight different Medical Assistance patients who had lived longer than six months.[1] By the time of Grane Hospice's appeal, it was clear that the Department's claim with regard to its services for Patient was reduced to one, *i.e.*, that Grane Hospice had admitted Patient without reviewing his pre-admission medical records. The Department argues that it was the duty of the medical director of Grane Hospice to do an independent evaluation of Patient's attending physician's diagnosis by reviewing Patient's prior medical records. Had the medical director done so, he would have discovered that Patient's records did not support the attending physician's diagnosis that Patient would die within six months.

At the hearing, the Department presented the telephonic testimony of Dr. Mark Bates. He explained that the New York Heart Association categorizes heart disease into four classes. To be a hospice patient, there must be a reasonable expectation of death within six months. For heart disease patients, this means they must be diagnosed as having a disease at the Class IV level. Class IV heart disease is diagnosed when the patient is unable to carry out any physical activity without symptoms. Even at rest, there is shortness of breath. The patient is bedbound or able to move only from the bed to a chair. A normal heart has an ejection fraction rate of 60–65%; an end stage cardiac patient has an ejection fraction rate of 20% or less. The patient requires maximal medical management by diuretics and vasodilators.

Dr. Bates reviewed Patient's medical records, obtained from several different providers. He testified about the contents of those medical records.[2]

On March 28, 2008, Patient experienced a heart attack at the tip of the heart. At that time, his ejection fraction equaled 40%. Patient then underwent bypass surgery and a valve replacement. He suffered a mild stroke after the surgery. Patient's post-surgery medical records, dating to five months before his admission

---

1. The demand letter contains six-numbered paragraphs that concern eight different patients and six types of violations. Reproduced Record at 20a–21 a (R.R. ___). Paragraph 1 refers to Patient by name and states that his "record failed to meet Hospice Criteria standards for hospice diagnosis." R.R. 20a. The remaining paragraphs address other patients. Paragraphs 2 through 6 state that "[t]hree cases" had missing terminal illness forms; "[e]ight cases" had hospice-related services that should have been paid by the hospice provider; "[t]wo cases" did not provide a patient history and physical; "[f]ive cases" provided services less frequently than indicated on the plan of care (payment was not withheld for this claimed violation); and "[f]ive cases" had home health aide supervision visits beyond the fourteen-day limit. R.R. 20a–21a. The evidence presented at the instant hearing was whether Grane Hospice "documented the medical necessity of [Patient's] admission to hospice," *i.e.*, Demand Letter Paragraph 1. R.R. 20a, 220a.

2. Dr. Bates testified by telephone. At the conclusion of his telephone testimony Dr. Bates stated that he would provide the ALJ with copies of the medical records, the content of which formed the basis of Dr. Bates' opinion. These records were to be admitted as Exhibit C–6. R.R. 264a. In his list of the exhibits, the ALJ reports that "no exhibit labeled C–6 was admitted." R.R. 190a. Thus, the record does not contain any of Patient's medical records on which Dr. Bates based his testimony and opinion.

to Grane Hospice, reported that the middle structures in his chest were normal; his pulmonary vasculature was normal; and there was no fluid in the lungs. Stated otherwise, there was no evidence of end stage cardiac disease at this point in time.

Patient's medical records of September 2, 2008, six weeks before his hospice admission, reported complaints of chest pain, but his cardiologist determined their cause was not cardiac. He referred Patient to a gastroenterologist for an endoscopy. The cardiologist's records also showed that Patient's heart and lung exams were normal; that there was no evidence of fluid building up; and that there was no swelling of the extremities. Patient's ejection fraction was listed as normal. His congestive heart failure was listed as between Class I and II. A patient at Class II heart disease is comfortable at rest with only slight restrictions on physical activity. The cardiologist reduced Patient's diuretic.

On October 20, 2008, three days before his admission to Grane Hospice, Patient had a check-up with Dr. Gates. Dr. Bates testified that he believed Dr. Gates was Patient's family physician, but he was not certain. Dr. Gates' check-up reported a normal cardiovascular examination. Three days later, however, Dr. Gates signed a certification of terminal illness with a diagnosis of "end stage cardiac." R.R. 121a.

Based on these above-described medical records, Dr. Bates opined that Patient did not have a terminal illness when admitted to hospice care; rather, his condition was stable. Patient's medical records did not report an event that would have caused his diagnosis to fall from Class II to Class IV cardiac disease in the few days before his admission as a patient of Grane Hospice.

Grane Hospice presented the testimony of Dr. Thomas Mextorf, its medical director during the period in question.[3] He agreed that under the Medical Assistance guidelines Class IV cardiac disease must be established for a heart-related terminal illness. He also agreed with Dr. Bates' discussion of end stage cardiac disease but he added that there are several types of end stage heart disease. They include ischemic heart disease, hypertensive heart disease and inflammatory heart disease. Each can lead to congestive heart failure.

Dr. Mextorf opined that Patient had multi-vessel ischemic heart disease and remained symptomatic, suffering daily chest discomfort and shortness of breath. Dr. Mextorf believed these continuing symptoms indicated unstable plaque at some point in his arteries, leaving Patient at high risk of a catastrophic ischemic event at any time. Dr. Mextorf also testified that a patient can have a normal ejection fraction and still suffer ischemic heart disease at the Class IV level. Dr. Mextorf reiterated that it was the ischemic burden on Patient's heart that established his congestive cardiomyopathy.

With respect to Patient's second admission, *i.e.*, the period from August 19, 2010, through February 28, 2011, the Department explained that Dr. Bates had not yet reviewed Patient's relevant medical records and requested the hearing to be continued. The Bureau's administrative law judge (ALJ) denied the continuance. Dr. Mextorf then testified about Patient's second admission. In brief, he explained that Patient had been having mini-strokes, was dizzy, short of breath and growing progressively weaker. However, when Patient stabilized, he was discharged on February 28, 2011, and denied further hospice care.

---

**3.** In its brief, Grane Hospice states that Dr. Mextorf is its medical director.

It was undisputed that Patient's physician certified that he was not expected to live more than six months due to end stage cardiac disease. However, the ALJ concluded this was not controlling. Rather, it was the duty of Grane Hospice's medical director to make his own diagnosis and in doing so to review, *inter alia,* Patient's pre-admission medical records. Those medical records did not support a diagnosis of terminal cardiac disease; rather, they showed that Patient's medications had been decreased shortly before his admission to hospice care because he was stable. The ALJ rejected Dr. Mextorf's opinion that Patient could have a fatal heart attack at any time. The ALJ accepted Dr. Bates' opinion that Patient did not have end stage cardiac disease when he became a patient of Grane Hospice on October 23, 2008. The ALJ rejected the Department's request for reimbursement for the second admission period because the Department presented no evidence to rebut Grane Hospice's evidence that Patient's condition had declined. The Department's lack of evidence was attributed to its failure to obtain Patient's medical records in advance of the hearing.

Based on these findings, the ALJ recommended that Grane Hospice be ordered to reimburse the Department $71,630.25, *i.e.,* the amount it had received for treating Patient from October 23, 2008, through April 15, 2010. He also recommended that the Department's demand for reimbursement of the $26,805.65 Grane Hospice received for treating Patient from August 19, 2010, through February 28, 2011, be denied. The Department's Bureau of Hearings and Appeals adopted the recommendation of the ALJ without comment. Grane Hospice then petitioned for this Court's review.

On appeal,[4] Grane Hospice raises two issues. First, it contends that the Department erred because its admission of Patient satisfied each and every applicable regulation and there was no contrary finding. Second, it contends that the Department erred by applying a "medical necessity" standard, which applies to a specific medical treatment and not to hospice care.

The Act of July 13, 1967, P.L. 31 amended the Public Welfare Code under authority of the Medicaid Act 42 U.S.C. §§ 1396–1396w–5, to establish Pennsylvania's Medical Assistance program. Section 442.1 of the Public Welfare Code, 62 P.S. § 442.1. The Department has adopted "rules, regulations and standards, consistent with the law, as to eligibility for assistance and as to its nature and extent." 62 P.S. § 403(b). However, a medical director's obligations when certifying a patient for admission to hospice care is addressed exclusively in federal regulations.

Title 42 of the Code of Federal Regulations states, in relevant part, as follows:

> In order to be eligible to elect hospice care under Medicare, an individual must be—
>
> (a) entitled to Part A of Medicare; and
>
> (b) *Certified as being terminally ill in accordance with § 418.22.*

42 C.F.R. § 418.20 (emphasis added). The certification must specify that the patient

---

**4.** Our scope of review in an appeal of an adjudication of the Bureau is limited to whether constitutional rights were violated, whether an error of law occurred, or whether essential findings of fact are supported by substantial evidence. *Mazzitti and Sullivan Counseling Services, Inc., v. Department of Public Welfare,* 7 A.3d 875, 882 n. 5 (Pa. Cmwlth.2010). Credibility determinations are within the discretion of the fact-finder and will not be disturbed on appeal, absent an abuse of that discretion. *Id.*

has a life expectancy of six months or less.[5] The regulation requires more than one certification:

(1) For the initial 90–day period, the hospice must obtain written certification statements ... from—

(i) The medical director of the hospice or the physician member of the hospice interdisciplinary group; and

(ii) The individual's attending physician, if the individual has an attending physician.

42 C.F.R. § 418.22(c)(1)(i) and (ii). Further,

(a) The hospice admits a patient only on the recommendation of the medical director in consultation with, or with input from, the patient's attending physician (if any).

(b) In reaching a decision to certify that the patient is terminally ill, *the hospice medical director must consider at least the following information:*

(1) Diagnosis of the terminal condition of the patient.

(2) Other health conditions, whether related or unrelated to the terminal condition.

(3) *Current clinically relevant information* supporting all diagnoses.

42 C.F.R. § 418.25 (emphasis added). Finally, the hospice must "[f]ile written certifications in the medical record." 42 C.F.R. § 418.22(d)(2).

 Grane Hospice argues that it satisfied each of the above-listed requirements

regarding Patient's admission to hospice care, which are the only regulations cited by the Department. Dr. Gates, Patient's attending physician, certified his illness as terminal. Dr. Mextorf considered both Dr. Gates' diagnosis of a terminal illness as well as "current clinically relevant information." 42 C.F.R. § 418.25(b)(3). Thereafter, Grane Hospice documented Patient's condition every 60 days, as required.

The Department concedes that three different physicians certified that Patient's illness was terminal. However, it contends that this is not enough. Rather, it was the medical director's obligation to review Patient's prior medical records to ensure that they supported Dr. Gates' certification. The Department argues that the ALJ credited Dr. Bates' opinion and that this Court lacks the authority to reweigh this determination.

Dr. Bates did not testify from personal knowledge about Patient's medical condition as of October 23, 2008, or at any time. He never saw Patient. His opinion that Patient was not terminally ill on October 23, 2008, was based entirely upon out-of-court documents. He did not explain when or how he obtained Patient's pre-admission medical records. Because the medical records on which he relied were not offered into evidence, we have only Dr. Bates' testimony about what they say. In other words, his testimony constituted double hearsay.

---

5. The certification must conform to the requirements that follow:

(1) The certification must specify that the individual's prognosis is for a life expectancy of 6 months or less if the terminal illness runs its normal course.

(2) *Clinical information and other documentation that support the medical prognosis must accompany the certification and must be filed in the medical record*

*with the written certification as set forth in paragraph (d)(2) of this section.* Initially, the clinical information may be provided verbally, and must be documented in the medical record and included as part of the hospice's eligibility assessment.

42 C.F.R. § 418.22(b)(1) and (2) (emphasis added).

Dr. Bates concluded that Grane Hospice did not bring enough skepticism to bear upon the certification it received from Patient's attending physician, Dr. Gates, that Patient was terminal. Dr. Bates opined that it was Grane Hospice's duty to examine Patient's medical records.[6] This may, in fact, be a good idea, but there are gaps in this theory not addressed by Dr. Bates or the Department. First, there is no regulation that states that a hospice medical director must review a patient's prior medical records as part of his own certification that a patient is terminally ill. Likewise, there is no regulation that states how many prior medical records must be reviewed. One can argue that the records of the past year or even a longer period should be reviewed; one can argue otherwise. Absent such a regulation, the Department simply changed the rules for reimbursement after the care was provided. Second, Dr. Bates did not explain how the hospice provider is to obtain these prior medical records, whatever their vintage, or how the medical director is to determine the identity of the providers who provided care to a patient recommended for hospice care. Dr. Bates testified about medical records of a specialist and a primary care physician that treated Patient. He never explained how he got them or how the medical director was to (1) determine their identity and (2) demand their medical records.

Because Patient was enrolled in Medical Assistance, the Department presumably had all of Patient's medical records in its control or custody. It could have forwarded them to Grane Hospice, but there is no evidence that it did so. Nor did the Department ever advise Grane Hospice of the Department's belief that admission to hospice care required a review of some body

of a patient's prior medical records. The Department has not cited a single rule or regulation to that effect.

The only regulations relevant to hospice admission are those of the federal government listed above. They require the medical director to certify that a patient is terminally ill by considering specific information: (1) the patient's diagnosis of a terminal condition; (2) the patient's other health conditions; and (3) the "[c]urrent clinically relevant information supporting all diagnoses." 42 C.F.R. § 418.25(b)(1)-(3). This documentation "must be filed in the medical record ..." of the hospice patient. 42 C.F.R. § 418.22(b)(2).

Here, all three items were found in Patient's medical record at Grane Hospice. R.R. 96a–118a and 120a–123a. The "current clinically relevant information" supports a diagnosis of Patient's terminal illness. On October 23, 2008, a registered nurse did a complete physical examination of Patient and detailed his findings. R.R. 96a–118a. He reported episodes of severe chest pain, for which Patient took nitroglycerin. He reported Patient as having syncope, fatigue, palpitations and jaundice. He reported a heart murmur and "swishing sound from leaking valve." R.R. 104a. He reported "dyspnea" at rest and on exertion. His nutrition was poor; Patient was 5'10" and weighed 130 pounds.

The admission assessment noted Patient's diagnosis of end-stage cardiac disease. The assessment further noted that Patient's condition was terminal based on his: "CHF, Anemia, GI Bleed, Aortic valve disease (leakage)." R.R. 112a. Patient was diagnosed as no longer able to perform the routine activities of daily living without "severe" shortness of breath. R.R. 113a. Because Patient was not a

---

**6.** He does not so opine in the companion case we also decide this day. *See Grane Hospice*

*Care, Inc. v. Department of Public Welfare,* 72 A.3d 322 (Pa.Cmwlth., 2013).

candidate for surgery or any other medical intervention, his medical condition was described as deteriorating rapidly. The assessment reported Patient as having Class IV cardiac disease. R.R. 113a.

The Department accepted Dr. Bates' opinion that Patient was not terminally ill when admitted to hospice care, and this Court lacks authority to revisit that finding. *Renee v. Department of Public Welfare*, 702 A.2d 575, 579 (Pa.Cmwlth.1997). Indeed, Patient's survival beyond six months confirms Dr. Bates' opinion that on October 23, 2008, Patient was not terminally ill. This fact, however, is not dispositive.

First, Dr. Bates ended his discussion with Patient's records that were dated three days before his admission to hospice care by Grane Hospice, and he made no mention of the medical records prepared on the day of Patient's admission, *i.e.*, the most "current clinically relevant information." Dr. Bates did not address or refute the results of the medical examination done on the day of Patient's admission for hospice care.

Second, the regulation does not require a medical director to examine all or part of a patient's prior medical records. It requires only that the director have "current clinically relevant information." 42 C.F.R. § 418.25(b)(3). The regulation is very specific about what a hospice facility must document, and Patient's records contain that documentation. The Department has provided no evidence that Grane Hospice's "current clinically relevant information" as of October 23, 2008, was in any way inadequate.

For these reasons, the Department's adjudication that Grane Hospice reimburse the Department $71,630.25 is reversed. The denial of reimbursement for the sec-

ond Grane Hospice stay is not before this Court and, thus, remains unchanged.[7]

### ORDER

AND NOW, this 25th day of July, 2013, the order of the Department of Public Welfare, Bureau of Hearings and Appeals, dated June 7, 2012, in the above-captioned matter is hereby REVERSED in accordance with the attached opinion.

Jurisdiction relinquished.

---

**7.** Because we find in favor of Grane Hospice, we need not address its second claim of error.