Jurisdiction relinquished.

## BETHANY HOSPICE SERVICES OF WESTERN PENNSYLVANIA, Petitioner

v.

## DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2013.

Decided Dec. 9, 2013.

Reconsideration Denied Jan. 31, 2014.

---

Robert H.C. Ralston, Pittsburgh, for petitioner.

Peter J. Garcia, Senior Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION by Judge COHN JUBELIRER.

Bethany Hospice Services of Western Pennsylvania (Bethany) petitions for review of the Order of the Bureau of Hearings and Appeals (BHA) of the Department of Public Welfare (Department) that adopted the Recommendation of the Administrative Law Judge (ALJ) denying Bethany's appeal from a Retroactive Inpatient Denial by the Department's Bureau of Program Integrity, Division of Program and Provider Compliance (Bureau).[1] The Bureau retroactively denied Medical Assistance (MA) payment for hospice services provided by Bethany to patient M.O. (Patient) from October 11, 2006, six months after Patient entered hospice, to June 4, 2008, when the Patient was discharged, alive, from hospice on the basis that Bethany's records did not document a decline in Patient's condition. On appeal, Bethany argues that Patient at all times met the relevant criteria for hospice care, which do not require a decline in a patient's condition while the patient is in hospice.

Eligibility for hospice care through the MA program is governed by Section 1130.21 of the Department's regulations, which provides, among other requirements, that a recipient must "[b]e certified as being terminally ill by a doctor of medicine or osteopathy under § 1130.22 (relating to duration of coverage)." 55 Pa.Code § 1130.21. Section 1130.22 provides for the duration of hospice coverage, stating in relevant part:

> There is no limit on the available number of days of hospice coverage for a recipient who meets the eligibility requirements of § 1130.21 (relating to recipient eligibility requirements) and who is certified as being terminally ill in

---

1. This case was argued seriately with *Bethany Hospice Services of Western Pennsylvania v. Department of Public Welfare*, 2013 WL 6496330 (Pa.Cmwlth., No. 576 C.D.2013, filed December 9, 2013).

accordance with the following procedures:

(1) Basic requirement. For the first 60–day period of hospice coverage, the hospice obtains, within 2 calendar days after hospice care is initiated, a completed certification of terminal illness form signed by:

(i) The medical director of the hospice or the physician member of the hospice interdisciplinary group.

(ii) The recipient's attending physician if the recipient has an attending physician.

. . . .

(3) Subsequent periods. For each subsequent 60–day period, the hospice obtains, within 2 calendar days after the beginning of that period, a certification of terminal illness form completed and signed by the medical director of the hospice or the physician member of the hospice's interdisciplinary group.

(4) Certification form. The certification of terminal illness shall be carried out using the Department's certification of terminal illness form specified in Appendix A.

(5) Record retention. The hospice shall retain the certification statements described in this section for 4 years.

55 Pa.Code § 1130.22. The Department's regulations define "terminally ill" as "[a] recipient who has a medical prognosis that his life expectancy is 6 months or less." 55 Pa.Code § 1130.3.

In January 2006, Patient, aged 79, resided in a long-term care facility. The Patient was considered mentally retarded from birth and, in the four to six months prior to January 2006, she experienced increasing weakness, a decline in her functional status, and weight loss. In April 2006, Patient developed difficulty swallowing and a feeding tube was inserted. On June 9, 2006, Patient's family elected to place her in hospice. At that time she was described as having been unresponsive for two weeks. Bethany's physician certified Patient for hospice care for 90 days, through September 6, 2006. The physician gave Patient a prognosis of six months or less to live based on dementia, weight loss, and increased dependency for activities of daily living (e.g., feeding herself, dressing, bathing, etc.). At this time Patient was bed-bound, non-verbal, non-ambulatory, incontinent of bowel and bladder, and completely dependent with regard to her activities of daily living. Patient's score on the Karnofsky performance scale[2] was 30%, indicating that she was severely disabled, although death was not imminent. In addition, Patient exhibited malnutrition, hypertension, a history of cerebrovascular accident, aphasia, failure to thrive, and arteriosclerotic dementia with depressive features. (ALJ's Adjudication, Findings of Fact (FOF) ¶¶ 1–7.)

During Patient's first four months in hospice, she received pain medications and treatment for various decubitus ulcers (bed sores). Bethany recertified Patient for hospice care on 10 occasions between August 31, 2006, and May 22, 2008, at approximately two-month intervals. Bethany discharged Patient from hospice on June 4, 2008 because it determined she no longer met the criteria to remain in hospice, due to an improved prognosis. The Department, through the MA program, paid for the services Bethany provided to Patient. (FOF ¶¶ 18, 27–29.)

---

**2.** Dorland's Medical Dictionary defines the Karnofsky performance scale as "a widely used performance scale, assigning scores ranging from 0 for a nonfunctional or dead patient to 100 for one with completely normal functioning." Dorland's Medical Dictionary 1602 (29th Ed.).

On February 10, 2009, the Bureau sent Bethany a letter indicating that a review had found a potential MA overpayment on Patient's behalf. In March and April 2009 Bethany responded to the Bureau's findings. On April 27, 2009, the Bureau sent Bethany a final review letter indicating it would retroactively deny payment for Patient's hospice care from October 11, 2006 through June 4, 2008 on the grounds that Patient's medical records did not document medical necessity of continued hospice care.[3] Bethany appealed the Bureau's retroactive denial and hearings were held before the ALJ on November 30, 2012 and January 18, 2013. (FOF ¶¶ 30–34, 36.)

At the November 30, 2012 hearing, the Department clarified that it was seeking reimbursement for Patient's hospice care from October 11, 2006 through June 4, 2008 on the basis that Patient's medical records during the first four months of her hospice care, from June 9, 2006 through October 10, 2006, did not reflect a decline in Patient's medical condition. (Hr'g Tr. at 13–14, November 30, 2012, R.R. at 727a–28a.) Bethany had believed that the Department was seeking reimbursement for the period in question due to a lack of documentation for that period itself. (Hr'g Tr. at 14–16, R.R. at 727a–30a.) Therefore, the ALJ continued the hearing to allow Bethany to prepare its case.

At the January 18, 2013 hearing, the Department presented the testimony of Mark Bates, M.D. Dr. Bates testified that, giving Bethany the benefit of the doubt, he did not dispute that Patient was appropriate for hospice when she was enrolled in hospice care. Dr. Bates testified that one of the four criteria used by Bethany to determine a patient's prognosis, and thus whether a patient should be enrolled in or continue to receive hospice services, is whether there is a progression in the patient's terminal disease. (Hr'g Tr. at 14–15, January 18, 2013, R.R. at 751a–52a.) Dr. Bates testified that, subsequent to her admission, Patient's condition remained more or less stable with no decline towards death. (Hr'g Tr. at 21–24, R.R. at 759a–62a.) Dr. Bates testified that after four months with no decline, Bethany should have discharged Patient from hospice, keeping in mind that she could be readmitted if her condition began to decline. (Hr'g Tr. at 24–25, R.R. at 762a–63a.)

Bethany presented the testimony of Sam Angelo, Bethany's vice president and director of operations, and Margaret Kush, M.D., Bethany's medical director. Mr. Angelo testified that Bethany relies on guidelines published by Medicare (the Hospice LCD)[4] in determining whether a patient has a prognosis of six months or less to live. (Hr'g Tr. at 39, R.R. at 777a.) Mr. Angelo testified that, looking at the six months previous to her admission to Bethany, Patient's condition had been declining because her weight had been dropping and she had been unresponsive for two weeks. (Hr'g Tr. at 40–41, R.R. at 778a–79a.) In addition, Patient had multiple stage 4 decubitus ulcers. (Hr'g Tr. at 41, R.R. at 779a.) During her enrollment in hospice Patient suffered, at times, from increased pain and agitation, as well as weakness, diminished breath sounds, and a urinary tract infection. (Hr'g Tr. at 41–42, R.R. at 779a–80a.) These conditions indicated that Patient was declining. (Hr'g Tr. at 43, R.R. at 781a.)

---

**3.** Bethany states that the amount at issue for this period is $76,364.76. (Bethany Br. at 7 n. 2.)

**4.** The guidelines Mr. Angelo referred to are the Local Coverage Determination for Hospice, published by the Federal Centers for Medicare and Medicaid Services. (Hr'g Tr. at 45–46, R.R. at 783a–84a.)

Dr. Kush testified that it is difficult to know when a patient with dementia will die and the determination of life expectancy is based on the whole gestalt of the patient. (Hr'g Tr. at 74, R.R. at 812a.) Dr. Kush testified that patients with dementia usually die from infections caused by things like aspiration or decubitus ulcers. Dr. Kush testified that Patient was completely dependent for all her activities of daily living, was non-verbal, had some respiratory issues, and increased weakness. (Hr'g Tr. at 75–76, R.R. at 813a–14a.) Dr. Kush testified that, on August 31, 2006 and November 30, 2006, she certified Patient as having a life expectancy of 6 months or less on Patient's first two re-certifications after her admission to hospice. (Hr'g Tr. at 78–79, R.R. at 816a–17a.) Dr. Kush testified that, while Patient's condition was up and down during her enrollment in hospice, she believed that Patient got worse over time. (Hr'g Tr. at 79–80, R.R. at 817a–18a.)

The ALJ recommended denying Bethany's appeal. In doing so, she held that it was reasonable for Bethany to rely on the Hospice LCD to determine whether the Patient was terminally ill because it is not always possible to make a precise prediction of life expectancy. (ALJ's Adjudication at 11.) The ALJ noted, however, that the Hospice LCD itself acknowledges that its guidelines may be inadequate to predict a terminal prognosis, stating that a patient "may match a guideline, but by virtue of that individual having lived for a significantly prolonged period thereafter, he/she has shown that guideline to be inadequate to predict the appropriate terminal prognosis." (ALJ's Adjudication at 12 (quoting Hospice LCD at 15, R.R. at 707a.)) The ALJ held that Patient was in a chronic stable state rather than in the final stages of a terminal illness and that Bethany's appeal should, therefore, be denied. The BHA adopted the ALJ's recommendation without further analysis and Bethany now appeals to this Court.[5]

■ Before this Court, Bethany argues that the BHA erred in requiring Bethany to show a decline in Patient's condition because Patient met the MA regulatory requirements for hospice, as well as the guidelines in the Hospice LCD at all applicable times.[6]

■ According to the Department's regulations, as set forth previously, the primary question at issue in determining whether a patient enrolled in hospice is eligible to continue receiving hospice care is whether the patient is terminally ill. Whether a patient is terminally ill is a question of fact. *Grane Hospice Care, Inc. v. Department of Public Welfare*, 74 A.3d 1094, 1101 (Pa.Cmwlth.2013) (*Grane II*). In this case, the BHA explicitly held that it was reasonable for Bethany to rely on the Hospice LCD published by the Federal Centers for Medicare and Medic-

5. This Court's "review of the Department's final order is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether the necessary findings of fact are supported by substantial evidence." *Grane Hospice Care, Inc. v. Department of Public Welfare*, 72 A.3d 322, 326 n. 6 (Pa.Cmwlth.2013).

6. At oral argument, the Department argued that Bethany waived the argument that the Department has imposed an additional requirement that a hospice provider show a decline in clinical status because Bethany raised this issue for the first time in its Reply Brief. However, this argument in Bethany's Reply Brief is fairly subsumed in Bethany's argument in its main Brief that Patient met the applicable eligibility guidelines and requirements for hospice eligibility. *See* Pa. R.A.P. 2116(a) (stating that a brief's statement of questions involved "will be deemed to include every subsidiary question fairly comprised therein").

aid Services to determine whether Patient continued to be terminally ill during the period in which Bethany provided hospice care to her. (ALJ's Adjudication at 11.) In retroactively denying payment to Bethany, the BHA did not hold that Patient did not meet the Hospice LCD's guidelines, but instead held that, "a hospice provider must identify and document the clinical factors which demonstrate a patient is in the terminal stage of his/her illness *and* that there is a reasonable expectation of continued decline for a life expectancy of six months or less if the illness runs its normal course." (ALJ's Adjudication at 12 (emphasis added).) Thus, the Department imposed a requirement that, in addition to being terminally ill, a patient must also show a decline in clinical status.

While such a requirement may be prudent, we do not believe the Department may impose such a requirement on providers retroactively and without due notice. The Department cites no authority for this additional requirement other than its expert's testimony. Such testimony would be sufficient to support a factual determination; however, as noted above, the requirement of "decline" is an additional requirement over and above the factual question of whether a patient is terminally ill. This Court recently questioned the Department's imposition of such a requirement in *Grane Hospice Care, Inc. v. Department of Public Welfare*, 72 A.3d 322 (Pa.Cmwlth.2013) (*Grane I* ), stating:

> Under the regulation at 55 Pa.Code § 1130.22(3), there is no limit on the duration of hospice coverage. The hospice provider is required only to complete a new certification of terminal illness form every 60 days. The parties agree that this regulation does not state that there must be a decline in the pa-

tient's condition for the "certification of terminal illness" that the hospice must obtain to continue hospice care. 55 Pa. Code § 1130.22(3). The Department's addition of "decline" to the regulation is somewhat troubling, particularly since there was no evidence presented that Grane Hospice provided Patient with anything other than palliative care, which is defined as "reasonable and necessary" for a terminally ill patient.

*Id.* at 328 (footnote omitted).[7] As in *Grane I,* we are troubled that the Department has imposed the requirement that providers show a decline in a patient's clinical status without notice to providers, through regulation or otherwise, and that it seeks to impose this standard retroactively for treatment already provided. Such an imposition violates providers' rights to due process. *See Jaquay v. Workers' Compensation Appeal Board (Central Property Services),* 717 A.2d 1075, 1077 (Pa.Cmwlth.1998) (stating that the retroactive application of a law implicates substantive rights where the law "imposes new legal burdens on past transactions").

Therefore, we must reject the Department's imposition of this additional requirement in this case. Because the BHA cited no reason for denying Bethany's appeal other than that Bethany failed to show a decline in the Patient's condition, we reverse the BHA's Order.

### ORDER

**NOW,** December 9, 2013, the Order of the Department of Public Welfare in the above-captioned matter is hereby **REVERSED.**

---

7. The petitioner in *Grane I* did not challenge the Department's imposition of the require- ment of decline, as Bethany does in this case, so this Court did not reach the issue.